Leonard **BAILEY**, Appellant,

v.

**STATE** of Indiana, Appellee.

No. 879S232.

Supreme Court of Indiana.

Nov. 6, 1980.

Walter E. Bravard, Jr., Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Cindy A. Ellis, Deputy Atty. Gen., for appellee.

DeBRULER, Justice.

The appellant, Leonard Bailey, was convicted of robbery, a class A felony. He was charged with the robbery of Thomas Ott which resulted in serious bodily injury to one Keith Guyden. He was convicted following a trial by jury and received a sentence of fifty years. He appeals raising the following issues:

(1) Whether the robbery statute is so vague and uncertain as to be unconstitutional;

(2) Whether the evidence is sufficient to sustain the conviction;

(3) Whether the denial of a motion for mistrial was error;

(4) Whether it was error for the court to give a preliminary instruction informing

the jury in a general manner of the possible penal consequence of conviction; and

(5) Whether the court erred in prohibiting defense counsel from referring to possible sentences under the robbery statute.

## I.

■ Bailey was convicted of violating Ind.Code § 35–42–5–1, which states:

"A person who knowingly or intentionally takes property from another person or from the presence of another person:

(1) By using or threatening the use of force on any person; or

(2) By putting any person in fear;

commits robbery, a class C felony. However, the offense is a class B felony if it is committed while armed with a deadly weapon, and a class A felony if it results in either bodily injury or serious bodily injury to any other person."

He challenges his conviction on the ground that this statute is repugnant to the Fourteenth Amendment in that it is impermissibly vague or overbroad.

"The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss*, (1954) 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989.

"A penal statute is sufficiently certain if the offense is defined so that a person of ordinary intelligence can perceive the wrong intended to be prohibited." *Stotts v. State*, (1971) 257 Ind. 8, 271 N.E.2d 722. The statute authorizes a conviction for a class A felony if the robbery "results in either bodily injury or serious bodily injury to any other person." Appellant was convicted of the class A felony. We judge the statute on its face. Appellant argues that men of ordinary intelligence would comprehend the spatial and temporal limitations inherent in the term "results in" in different manners. He also argues that the stat-

ute can take the chain of causation *ad infinitum*. The unspoken premise upon which this argument rests is that statutes must set time and space limitations which are so clearly defined that they are susceptible of but a single clear meaning. Obviously no drafter of statutes could meet such a standard. Criminal statutes are intended to identify conduct deemed illegal. Human conduct does not repeat itself in a machine—like manner, but comes in many variations. Being aware of the difficulty in drafting a criminal statute the United States Supreme Court in *Colten v. Commonwealth of Kentucky*, (1972) 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584, said:

"The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." 407 U.S. at 110, 92 S.Ct. at 1957.

The statute sets forth on its face the requisite elements of the offense of robbery. These include such ongoing active processes as taking, using, threatening and putting in fear. In order for the offense of robbery to be elevated to a class A felony, an injury must communicate with one of these processes. When the statute is considered in its entirety, the term "results in" does introduce a generalness into the statute, but the statute nevertheless provides fair warning of the types of conduct prohibited.

Appellant also argues that the word "it" in the last clause of the statute could be read to refer to one of the elements of the offense such as the taking, or to the crime of robbery, and the existence of these two suggested meanings renders the statute vague. As we read this statute, the word "it" refers simply to the offense, namely, robbery. On the basis of the arguments made we are not persuaded that the statute is impermissibly vague or broad.

## II.

According to the evidence at trial, Ott and Guyden met appellant Bailey and another man in a bar. Ott agreed to drive appellant and his companion to another location. After being directed by them in a peculiar manner, Ott became suspicious and stopped the car and ordered the two out. Bailey then put a knife to Ott's throat and ordered his companion to take Ott's wallet. Having done so, Bailey and his companion departed the spot and Ott and Guyden followed after them on foot. The chase lasted about one–half hour.

Guyden overtook Bailey and in a struggle Bailey wielded his knife and cut Guyden several times. Guyden flagged a car and went to the hospital for treatment. Moments later the police arrived on the scene and arrested Ott and Bailey. Bailey's companion escaped.

Appellant contends that the term "results in" is ambiguous and uncertain and requires interpretation and further the robbery of Ott did not "result in" the injury to Guyden. He argues that the robbery had been completed prior to the injury and that the connection between the robbery and the injury had become so attenuated due to intervening causes and the passage of time that the trier of fact could not regard the two events as a single act.

■ When considered in the context of the entire statute, the term "resulted in" does not render the statute ambiguous. The term is a causative one of considerable generality, but in denoting natural consequences and human responses to express human conduct within the ambit of elements of the offense of robbery, that quality does not result in legal uncertainty. We are, therefore, under a duty to enforce the statute according to its plain meaning. *Cooper v. State*, (1980) Ind., 403 N.E.2d 826; *Eads v. J. & J. Sales Corp.*, (1971) 257 Ind. 485, 275 N.E.2d 802. If an injury to any other person arises as a consequence of the conduct of the accused in committing a robbery, the offense is properly regarded as a class A felony. If the injury does not so arise attribution of a class A felony is improper.

■ Appellant contends that the evidence was insufficient to show that the robbery of Ott resulted in the injury to Guyden. In determining this question we do not weigh the evidence nor resolve questions of credibility but look to the evidence and reasonable inferences therefrom which support the verdict. *Smith v. State*, (1970) 254 Ind. 401, 260 N.E.2d 558. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt. *Taylor v. State*, (1973) 260 Ind. 64, 291 N.E.2d 890; *Glover v. State*, (1970) 253 Ind. 536, 255 N.E.2d 657. Under the facts here Ott and Guyden immediately took up the chase after Bailey and his companion. All parties were intoxicated to a degree. The chase lasted for about one–half hour and ended several blocks from the point where the automobile had been left when Guyden was cut by appellant in a struggle. Ott and Guyden had it in mind to catch their assailants and retrieve the stolen money. This purpose was formed in the victims when the money was first taken as the natural response to the threat and the taking, and this purpose continued up until the injury to Guyden occurred. Such a response from the victim could be expected and anticipated by one committing a robbery. Appellant and his companion at the time were in the process of taking the stolen money from Ott and making their get–away at the time that Ott and Guyden started in pursuit. Upon this evidence and these inferences, the trier of fact was warranted in concluding to the requisite degree of certainty that the injury to Guyden was a result of the robbery of Ott.

## III.

■ During the testimony of the victim, Guyden, he testified that he saw appellant in a one–to–one confrontation while at the hospital after the arrest of the other two men had occurred. This testimony was objected to on the basis that the State had

failed to reveal it in accordance with a continuing order of discovery granted appellant, and a motion for mistrial was made. The trial court sustained the objection, admonished the jury to disregard the testimony, but denied the mistrial motion. Appellant contends that it was error to deny his motion for mistrial. Such a motion must be granted where the event at trial upon which it is predicated has placed the accused in a position of grave peril to which he should not have been exposed. *Maldonado v. State*, (1976) 265 Ind. 492, 355 N.E.2d 843.

When the defense objected to this testimony, the jury was admonished to disregard it. There is a presumption given to the curative effect of a jury admonition to disregard testimony in overcoming any prejudice. *May v. State*, (1976) 265 Ind. 25, 349 N.E.2d 171; *French v. State*, (1977) 266 Ind. 276, 362 N.E.2d 834. The challenged testimony would have tended to prove the identification of appellant as to the robber who inflicted the knife wound upon Guyden. Both Ott and Guyden had observed appellant in the bar on the evening of the incident, had talked with him on the street, and in the car, and had chased him for about a half hour through the streets. The chase was finally ended when the police stopped and arrested both Ott and appellant at the same spot. An officer identified appellant as one of the men he arrested and testified further that he took a knife from appellant's possession. Both Ott and Guyden pointed out appellant as the man who had robbed Ott and cut Guyden. The identification evidence was strong in its tendency to prove appellant to be the assailant. Under these circumstances any vestige of probative force of the testimony ordered stricken following the court's admonition to disregard it could not have placed appellant in a position of grave peril. There was therefore no error in the denial of the motion for mistrial.

### IV.

Over appellant's objection the trial court gave the following preliminary instruction to the jury:

"A person who is convicted of a crime by jury is sentenced by the judge. In many cases the judge has certain sentencing alternatives which may include probation, restitution, short sentences, rehabilitation programs, etc. In other cases the law requires the judge to sentence to a term of imprisonment that is either fixed by the law, or set by the jury.

A person who is sentenced to imprisonment for less than life is entitled by law to a reduction of his time based upon a certain schedule and upon his behavior in the institution. Also he is given credit toward his sentence for time spent in jail on this charge. For these reasons it is possible that a person could serve considerably less than the stated sentence. On the other hand, it is also possible that a person could serve the full maximum. In either case it is determined by future events beyond our present knowledge or control.

Therefore, in arriving at your verdict, you should not consider or speculate as to the actual amount of time a person will serve."

He contends that this instruction is contrary to the policy of Ind.Code § 35–50–1–1, which states: "The Court shall fix the penalty of and sentence a person convicted of an offense.", and this Court's opinion in *Debose v. State*, (1979) Ind., 389 N.E.2d 272. There this Court stated that in light of the statutory withdrawal from the jury of the duty to engage in the sentencing function, "In performing this guilt assessing task, the jury must be oblivious to the legislature's punishment scheme." Id. at pp. 273–274. Appellant would have us condemn this instruction because it injected the matter of penalties into the trial and invited speculation of the jury about them.

The condemnation of this instruction by appellant is not warranted. It is in accord with the emphatic directive of the *Debose* case and with this Court's judgment in *Feggins v. State*, (1977) 265 Ind. 674, 359 N.E.2d 517, that the most effective method of preventing improper jury speculation

about the punishment which the accused will receive upon conviction is by instructing them that

> "the State is authorized by law to confine the accused for the full length of any sentence received by him, but that second, various devices exist which could reduce the length of any sentence received by the defendant, including parole, pardon, and 'good time', and that the length of the sentence which the accused will actually serve is contingent upon numerous future events and cannot be determined with any reasonable certainty at the time of trial. For this reason the jurors should exclude consideration of such devices from their deliberations so as not to fall into fruitless speculation." 265 Ind. at 686, 359 N.E.2d at 524.

The instruction given by the court is of this type. It is an aid to the jury in forgetting any concerns over potential punishments. It is not required to be given in every jury case; however, when the trial judge in his considered discretion chooses to give it, there is no error.

### V.

■ Appellant finally challenges the order of the trial court that he not make mention of the penalties set by the Legislature for the crime with which he stood charged. He contends that this prohibition denied him a fair trial, and the right to counsel, and a jury trial in which the jury was able to judge the law and facts according to its authority granted by Art. I, § 19, of the Indiana Constitution. The latter argument, namely, that the jury was prevented from fulfilling its duty to judge both the law and facts has been expressly rejected by this Court. *Craig v. State*, (1979) Ind., 398 N.E.2d 658; *Debose v. State, supra.* The limitation which the order placed upon defense counsel cannot, we think, be considered an impermissible limitation upon the right to counsel. Rules of Evidence and the Canons of Professional Ethics are but two among many limitations upon the efforts which defense counsel may make in furtherance of the interests of the accused in a criminal trial. Counsel must obviously work within the confines of the court system and the rules of law.

The question of whether or not any single limitation such as the one at hand is consistent with due process, that is with our basic notions of due process and fundamental fairness, remains though a legitimate question. Is a determination of guilt by a trier of fact wholly uninformed about the effect of that decision upon the accused consistent with our notions of fundamental fairness? In answering this question we think it necessary to keep in mind the limitation imposed by the trial judge in this case. In the course of rendering this order from the bench the court directed counsel as follows:

> "COURT: So the Court is going to grant the Motion in Limine and instructs counsel for both sides to notify all witnesses whomsoever you may call not to discuss or make any reference to the sentence and the Court further instructs both counsel not to refer to possible sentencing. . . .
>
> COURT: I think what the order has to be is that you do not refer to possible time.
>
> COUNSEL: Twenty to fifty years, thirty years.
>
> COURT: Right . . . . Now the question is speculation by the Jury on any time. . . .
>
> COUNSEL: Thank you judge. Now if I may clarify one thing. Mr. Jodka's hypothetical question about a great deal of time, that is, he also is forbidden to mention that, is that correct?
>
> COURT: I think he can make his comments, and I don't want to restrict in advance what anyone might say to the Jury, I'm simply stating you cannot mention penalties. You cannot mention the time that a man might serve in specifics, so that we cannot let the Jury know what the sentencing provisions of the State might be."

The court's explanation of his ruling indicates that defense counsel was not entirely foreclosed from arguing to the jury that serious penal consequences would befall the

defendant upon a verdict of guilty. Defense counsel would not have been prevented from arguing in some manner to the jury that the crime of robbery is a serious felony, and that a class A felony is more serious than either a class B or class C felony as such statements would be no more than a juror would discern on his own from the court's instructions defining such crimes. In this instance then, defense counsel was left with the leeway to argue to the jury in general terms that the charge was not a mere misdemeanor, nor a trifling matter, but one of the gravest importance to the accused. We believe that the leeway accorded defense counsel in this instance to argue that the case was a weighty one, clearly would satisfy our notions of fundamental fairness in cases in which the jury is limited to determining guilt or innocence.

The conviction is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.