Dale POLLARD, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1–282A36.

Court of Appeals of Indiana, First District.

Aug. 24, 1982.

Rehearing Denied Sept. 28, 1982.

Allen F. Wharry, Martin, Wharry & Disler, Lebanon, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Stephan E. Wolter, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellant Dale Pollard (Pollard) was convicted by a jury in the Boone Circuit Court of the offense of driving while intoxicated which resulted in the death of another person under Ind.Code 9–4–1–54(b) (Supp.1981), a Class C felony. From a sentence of imprisonment he appeals.

We affirm.

## STATEMENT OF THE FACTS

The evidence most favorable to support the conviction is as follows: On September 17, 1980, between 7:30 and 7:45 p. m. a three car wreck occurred on Indiana State Highway 39. Highway 39 consists of two lanes running north-to-south on the north edge of Lebanon in Boone County, Indiana. Near the scene of the wreck, various restaurants and businesses were located along the highway. Within a few hundred yards the speed limit for the south bound lane decreased from the standard 55 m. p. h. limit to 45 m. p. h. and then to 35 m. p. h. At the point of impact it was 45 m. p. h. though it became 35 m. p. h. about 200 feet further south. At the time of the collision, the road was dry, the weather was clear, and, although it was growing dark, the area of the collision was well lighted.

The decedent, Betty Warren, entered the highway from a K-Mart Shopping Center on the west side of the road. Just as she was crossing the south bound lane, a south bound car driven by Pollard struck Betty Warren's car in the left side and knocked it into yet a third car, causing serious damage to her car. Betty Warren died at the scene of the collision from injuries she received when she was thrown from her car. Pollard was trapped in his car and special equipment was necessary to extricate him. He was found unconscious or semi-conscious under the steering wheel, with an open, half empty bottle of beer between his legs. At least two other beer containers and a six-pack carton were found strewn about the front seat. The entire car smelled of alcoholic beverages.

At the Witham Hospital, where Pollard was taken to be treated for injuries, officers observed him in the hall on a gurney outside the emergency room loudly, profanely, and abusively cursing the doctors and nurses who were trying to assist him. Blood alcohol chemical analysis which revealed an alcohol level of .31 percent of blood serum, was performed by hospital personnel for the purpose of treatment, and later the test was repeated by Indiana State Police chemists on the same sample, revealing a blood alcohol level of .31 percent of blood serum, the equivalent of .26 to .27 percent of whole blood.

A filling station attendant identified Pollard as the man who, about an hour to an hour and a half prior to the wreck, came to his station in Lebanon to ask directions. When Pollard alit from his car, he, for no discernable external reasons, fell down. He then crawled and pulled himself back into his car. The attendant smelled alcohol and saw the above described beer containers and six-pack carton on the front seat. One

witness to the accident estimated Pollard's speed immediately before the wreck at 70 to 75 m. p. h., and stated that Pollard was going out of control. Another witness testified that judging from the impact, Pollard was traveling at a high rate of speed.

## ISSUES

Pollard raises the following issues for review:

I. Whether the trial court erred in overruling Pollard's motion to suppress the results of the blood alcohol tests performed on the blood sample taken from him at the hospital;

II. Whether the trial court should have sustained Pollard's objection to the blood alcohol test results on the grounds that the State failed to lay a proper foundation;

III. Whether the trial court erred in overruling Pollard's motion to quash subpoena;

IV. Whether the trial court erred in allowing a hospital technician to testify to allegedly privileged information, i.e. the blood alcohol tests;

V. Whether the trial court properly permitted the Indiana State Police Laboratory technician to testify to the results of a test the technician performed on Pollard's blood;

VI. Whether the trial court erred by sending all exhibits to the jury room after deliberations had commenced; and

VII. Whether the evidence was sufficient to support the conviction.

We have chosen to discuss Issues I, III, IV, and V together as those issues concern the same subject matter.

## DISCUSSION AND DECISION

*Issue I. Motion to Suppress; Issue III. Motion to Quash Subpoena; Issue IV. Privilege; Issue V. Results of State Police Laboratory Blood Test*

Witham Hospital laboratory technician Becky Bartlett, at the emergency room physician's request for the purpose of diagnosis and treatment, performed a blood alcohol test which revealed evidence of alcohol consumption. The test was performed at the hospital without the request of the police. The investigating officer, upon learning of the existence of the blood test, reported it to the prosecuting attorney who gave him a subpoena for the blood sample. The officer served the subpoena upon Becky Bartlett who gave him the blood sample, and the officer transported it to the Indiana State Police Laboratory for a second analysis. That analysis, performed by Robert Reed, a State Police chemist, showed an alcohol level of .26 to .27 percent. Both Becky Bartlett and Robert Reed were permitted to testify at trial as to the results of their analyses. Pollard's motion to suppress both test results proceeds on the following theories: (1) physician-patient privilege applies, (2) no consent was given by him, and (3) the blood sample was not taken pursuant to the implied consent statute, Ind.Code 9–4–4.5–1 through Ind.Code 9–4–4.5–7 (Supp.1981).

We are of the opinion that any question concerning the admissibility of the results of Becky Bartlett's analysis was resolved by Ind.Code 9–4–4.5–7 (Supp.1981), in force on the date of the events in question, the validity of which statute Pollard does not challenge.

"Chemical test operators; disclosure of test results; limitations

Sec. 7. (a) A physician, or a person under the direction of a physician, who performs a chemical test on blood obtained from another person, shall disclose the results of such a test to any law enforcement officer when a prosecutor or his deputy requests the results as a part of a criminal investigation.

(b) A physician, hospital, or an agent of either is not civilly liable for disclosing test results in accordance with this section.

(c) For the purposes of this section, the privileges arising from a patient-physi-

cian relationship do not apply to the test results described in this section, and these test results may be admitted in a criminal proceeding in accordance with the applicable rules of evidence.

(d) The exceptions to the patient-physician relationship specified in subsection (c) do not affect those relationships in any proceedings not covered by this section.

(e) The test results obtained by a law enforcement officer under subsection (a) may only be disclosed to a prosecuting attorney or his deputy for use as evidence in a criminal proceeding.

(f) Nothing in this section requires a physician or person under the direction of a physician to draw blood or perform a chemical test on blood."

■ Becky Bartlett was called as a witness by the prosecuting attorney. Her testimony was not privileged under this statute, and Pollard's consent was not required. The fact that police officers subpoenaed the original blood sample does not alter this result; the subpoena was served after the hospital's test was complete and had no relevance to that test or the above statute.

■ We next turn to the test results testified to by Robert Reed. The trial court's decision to admit Reed's testimony can be supported by the following two cases which are factually similar to the one before us. *Schmerber v. California*, (1966) 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, held that neither the Fifth and Fourteenth Amendments privilege against self incrimination, nor the Fourth and Fourteenth Amendments privilege against unreasonable search and seizure proscribed blood alcohol tests performed in a reasonable manner with probable cause on a defendant charged with driving while intoxicated. In *Schmerber* the defendant was arrested at the hospital while receiving treatment for injuries suffered in the wreck that gave rise to the charge. Over the objection of the defendant made on advice of counsel, a police officer directed the attending physician to take a blood sample; analysis of the blood revealed an incriminating blood alco-

hol level. The Supreme Court based its decision upon these grounds: (1) a blood sample was not evidence of a testimonial or communicative nature protected by the Fifth and Fourteenth Amendments, (2) the Fourth and Fourteenth Amendments protect only from unreasonable searches or searches made in an improper manner, and this search was made in a reasonable manner, upon probable cause, incident to a lawful arrest, and (3) exigent circumstances existed because of metabolic destruction of evidence.

In *Shultz v. State*, (1981) Ind.App., 417 N.E.2d 1127 (*transfer denied*), the defendant, while being treated in a hospital emergency room for injuries received in a wreck, had a blood sample withdrawn. The trial court permitted the laboratory technician who performed the blood test to testify to the incriminating blood alcohol level the test had revealed. Shultz attempted to distinguish *Schmerber* on the ground that he was not under arrest as Schmerber had been. The court held that the police intended to arrest Shultz, had probable cause to do so at the earliest possible time, and therefore the blood sample was withdrawn pursuant to a lawful arrest. The *Schultz* court stated yet other reasons supporting the legality of drawing the sample:

"The determination by the Supreme Court in *Schmerber, supra,* that there was no constitutional impediment to drawing a blood sample to determine the physical condition of a suspect provides a basis for Indiana statutes on the subject. I.C. 9–4–4.5–1 provides, *inter alia*, that '[a]ny person who drives . . . a vehicle on the public highways of this state shall be deemed, by virtue of such driving, . . . to have given his implied consent to submit to a chemical test for intoxication when asked to submit to such tests by any law enforcement officer.' I.C. 9–4–4.5–2 defines 'chemical test' as including blood tests taken for the determination of the presence of alcohol or a controlled substance. Thus, despite his protestations to the contrary, Shultz did indeed consent to the blood test in question. The gist of his

argument going to this issue implies that because the doctor who ordered the blood test did not testify as to a medical necessity for the test, it was taken for the sole purpose of determining Shultz's blood alcohol content. Shultz argues that the search was unlawful because of his lack of consent. Assuming without deciding that there was indeed a 'search' conducted by the doctor, Shultz impliedly consented to that search by driving his car on an Indiana highway. *Clark v. State* (1978) (Ind.App.) 372 N.E.2d 185; *State v. Hummel* (1977) (Ind.App.) 363 N.E.2d 227, *cert. denied* 436 U.S. 905, 98 S.Ct. 2236, 56 L.Ed.2d 403 (1978). Assuming, alternatively, that there was no search but that instead the test was taken for medical purposes, Shultz waived any privilege adhering to medical communications by testifying in detail as to his physical condition (Issue Three, *supra*). The Supreme Court's determination in *Schmerber*, coupled with the Indiana statutes establishing implied consent on the part of drivers, dispose of Shultz's contentions regarding this issue.

There is yet another basis for the legitimacy of the drawing of the sample. The required exigent circumstances, *Arkansas v. Sanders* (1979), 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235, were present in this case because of the metabolic destruction of the evidence which was present in Shultz's blood. *Schmerber v. California, supra; Devaney v. State* (1972), 259 Ind. 483, 288 N.E.2d 732; *Maxey v. State* (1969), 251 Ind. 645, 244 N.E.2d 650; *Clark v. State, supra.*

Thus we find there were three grounds justifying the drawing of the blood test. First, that, as in *Schmerber*, it was a search incident to a lawful arrest, and, second, Shultz impliedly consented to the test by virtue of Indiana statutes supported by *Schmerber*, and finally, exigent circumstances rendered the requirement of a search warrant inapplicable in this situation. We therefore hold that Shultz's rights were not violated and that the evidence of intoxication revealed by

analysis of the blood test was properly admitted."

*Id.,* at 1137–38.

Pollard furiously assails the above authorities and attempts to distinguish them from this case because: (1) merely driving on the highway does not invoke the implied consent law, Ind.Code 9–4–4.5–1 *et seq.,* unless there is a specific request to submit to a test, (2) physician-patient privilege applies, (3) no exigent circumstances existed as in *Schmerber* because the blood was already drawn, (4) probable cause was lacking, and (5) Ind.Code 9–4–4.5–7 applies only to test results, not to blood samples. *Shultz* established that driving does invoke the implied consent statute even though, as here, no request for a test is made. Ind. Code 9–4–4.5–7 abrogated the physician-patient privilege for blood alcohol test results, and we are of the opinion that under the authority of the statute, *Schmerber,* and *Schultz,* it is abrogated as to the blood sample as well. If the original test result is not privileged, it would be facetious to state that the result of a subsequent confirmation test would be privileged when based on the same specimen.

The trial court's ruling can be supported on other grounds. If, under *Schmerber,* an officer could, without warrant, and over the objection of the defendant upon advice of counsel, order a blood test taken and the result admitted into evidence, no error could be predicated upon the actions here of taking the sample from the hospital after it had been drawn and tested. The wreck, the presence of intoxicating beverages, and Pollard's conduct at the hospital were sufficient to provide probable cause. Further, it must be borne in mind that there was no search of Pollard, and nothing was taken from him by the police. The unprivileged blood sample was taken from the hospital. A defendant may not claim the right of another to be free from search and seizure. *Johnson v. State,* (1979) Ind., 390 N.E.2d 1005. This is so even if the search was without probable cause. *Kirkland v. State,* (1968) 249 Ind. 305, 232 N.E.2d 365. Finally, assuming *arguendo*

that the admission of the results of the analysis by Robert Reed was improper (and we hold it was not improper), such error would be harmless. It is the rule that admission of improper evidence which tends only to disclose a fact proven by other properly admitted evidence is harmless error. *Williams v. State*, (1981) Ind., 419 N.E.2d 134; *Smith v. State*, (1981) Ind., 419 N.E.2d 743. As recited in the statement of the facts, the results of Becky Bartlett's blood test results indicated the presence of alcohol, and there was much testimony by other witnesses regarding intoxication. Therefore, the court committed no reversible error in overruling the motion to suppress and the motion to quash subpoena and admitting the results of both blood tests into evidence.

*Issue II. Improper foundation for evidence of blood alcohol test*

In the hearing on Pollard's Motion to Suppress the blood tests, Becky Bartlett testified that she was a laboratory technician at Witham Memorial Hospital. She received her training at the Physician's Clinical Laboratory in Lafayette, was certified by the State of Indiana, and had five years experience. In the State's case in chief she added that her duties require her to perform all kinds of blood tests, including blood chemistries, complete blood counts, blood banking, cross matching, and blood alcohol levels.

■ Becky Bartlett testified in detail about how she performed the blood alcohol test. The test was done after all other tests were complete. It is performed on an automatic chemistry analyzer (A.C.A.), and different commercially prepared substances are used for each type of test. She testified that she first spins the blood down into a serum on a centrifuge. Then she puts the commercially pre-prepared substance for the blood alcohol test into the A.C.A., adds the blood sample, and turns the machine on. She stated that she did not know what chemicals are used in the test, how the machine operates, or how the analysis by the machine is made. The result of the analysis is printed out by the machine. She is trained to use the A.C.A., and she could not make the test absent the machine. Because Becky Bartlett did not understand the operation of the A.C.A., Pollard contends that sufficient foundation for her testimony was not established.[1] He cites no authority to sustain this proposition.

■ The sufficiency of the foundation generally goes only to the weight of the evidence and not its admissibility. *Collins v. State*, (1981) Ind.App., 422 N.E.2d 1250. There is no hard and fast rule as to the quantum of knowledge required to qualify a witness as an expert in a given field. He must be shown to be competent. Such competency is addressed to the trial court's discretion. No precise knowledge is required, but the witness must have sufficient skill, knowledge, and experience in his field to make it likely that his informed inference will aid the jury properly to determine such matters. *Reid v. State*, (1978) 267 Ind. 555, 372 N.E.2d 1149; *see King v. State*, (1979) Ind.App., 397 N.E.2d 1260. In *Reid* the court approved the admission of the results of a commercially prepared chemical test which shows the presence of minute mineral tracings; the witness who administered the test admitted he had no understanding of the reason for the reaction which occurred when the test was administered.

We are of the opinion that the court committed no error in admitting the testimony.

---

1. Pollard also argues that the foundation was improper because Becky Bartlett did not testify that she "followed any approved procedure in obtaining the results." Pollard failed to object on this ground at trial and the argument is waived. *Gradison v. State*, (1973) 260 Ind. 688, 300 N.E.2d 67; *Clouse v. Fielder*, (1982) Ind. App., 431 N.E.2d 148.

Pollard also argued that Becky Bartlett's test results were expressed in terms of "ethanol" content, and that the State did not attempt to relate "ethanol" to alcohol or define "ethanol." No objection was made on this ground and the argument is waived. *Gradison, supra; Clouse, supra.*

*Issue VI. Error in sending all exhibits to the jury room*

After the jury had deliberated for about an hour they sent a note to the court requesting, "Can we have a diagram from Officer Cooper and the photos from the Lebanon Reporter." About ten minutes later they sent another note stating, "We also need the definitions of proximity and intoxicated." The trial judge then reread all instructions, and over the objections of Pollard, sent all exhibits to the jury room. The exhibits included arrest tickets, court entries, and abstracts from the Bureau of Motor Vehicles of prior convictions for driving while intoxicated. Also there were photos of the scene, the results of the blood alcohol tests, and a diagram of the scene. Pollard contends error, without supporting authority, because (1) the exhibits were sent *after* the jury commenced deliberating, (2) certain exhibits had not been introduced to establish the truth of any statement contained in the exhibits, and (3) the exhibits could not possibly have aided the jury.

*Thomas v. State,* (1972) 259 Ind. 537, 289 N.E.2d 508, adopted Sec. 5.1 of the Standards Relating to Trial by Jury (American Bar Association Project on Standards for Criminal Justice) which reads as follows:

" 'Materials to jury room.

(a) The court in its discretion may permit the jury, upon retiring for deliberation, to take to the jury room a copy of the charges against the defendant and exhibits and writings which have been received in evidence, *except depositions.*

(b) Among the considerations which are appropriate in the exercise of this discretion are:

(i) whether the material will aid the jury in a proper consideration of the case;

(ii) whether any party will be unduly prejudiced by submission of the material; and

(iii) whether the material may be subjected to improper use by the jury.' (our emphasis)."

*Thomas, supra* at 540, 289 N.E.2d 508. Pollard specifically complains of the exhibits demonstrating prior convictions and their dispositions; the jail booking card which only contains the offense charged and personal information, including Social Security number, for which it was admitted; Becky Bartlett's blood alcohol test report and the State Police blood alcohol report. Pollard cites *Thomas, supra,* and *Anderson v. State,* (1977) 172 Ind.App. 549, 360 N.E.2d 1266, as controlling. In *Thomas,* the court held that sending a narrative impeaching statement to the jury was an abuse of discretion. In *Anderson,* sending to the jury mug shots reflecting a criminal record was likewise an abuse of discretion. The *Anderson* court, citing *Blue v. State,* (1968) 250 Ind. 249, 235 N.E.2d 471, for its general proscription against demonstration of a previous criminal record by mug shots, stated that the aid to identification (for which the photographs had been admitted) was of limited utility, while the prejudice was great.

■ Pollard essentially argues that the record of prior convictions was irrelevant to the case, and that the results of prior convictions were prejudicial and should never have been brought to the jury's attention at all. He ignores the fact that he was also charged and tried in Count II with operating a motor vehicle while intoxicated, second offense, under Ind.Code 9–4–1–54, though not convicted. Requisite proof was prior convictions. No oral proof existed of these matters. The records were therefore material and necessary, and this case is distinguishable from *Thomas* and *Anderson.* Furthermore, the record does not indicate that any limiting instruction was given when these documents were admitted, and Pollard's argument that they were not admitted to prove the truth of the matters asserted is without foundation.

■ Pollard argues that although the photographs depict a serious accident, the facts surrounding the accident and its aftermath are basically undisputed, and it would be difficult to see how the photos would aid the jury. Damage to vehicles indicating the degree of force and impact is among the physical factors pertinent to determining the rate of speed of an automo-

bile. *Samuel-Hawkins Music Co., Inc. v. Ashby,* (1965) 246 Ind. 309, 205 N.E.2d 679. The photographs showed that the cars here were heavily damaged; therefore, the photographs were relevant, and could have been helpful to the jury.

Pollard further contends that error was committed in sending the exhibits to the jury *after* they had retired to deliberate, contrary to Standard 5.1, but he cites no authority for this. *Thomas, supra,* and Standard 5.1 must be read in conjunction with Ind.Code 34–1–21–6 and recent decisions of our Supreme Court. *See e.g., Smith v. State,* Ind., 437 N.E.2d 975 (1982); *Long v. State,* (1981) Ind., 422 N.E.2d 284; *Jackson v. State,* (1980) Ind., 411 N.E.2d 609; *Ortiz v. State,* (1976) 265 Ind. 549, 356 N.E.2d 1188. The statute reads as follows:

"34–1–21–6 Retirement for deliberation; request for information

Sec. 6. After the jury have retired for deliberation, if there is a disagreement between them as to any part of the testimony, or if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or their attorneys."

*Ortiz* construed this statute to provide that the trial court *must,* on the jury's request, read to it any properly admitted testimony or documentary evidence. The court stated that this was compatible with the ABA's Standards for Criminal Justice, Trial by Jury Sec. 5.2(A) (Approved draft 1968). In *Jackson, supra,* there was no abuse of discretion in permitting the jury to retire for its deliberations with ten photographs of the area where the victim's body was found, bullets taken from the body, and copies of the defendant's confession and *Miranda* waiver forms. In *Long, supra,* the trial court had allowed the jury to view the exhibits, including the defendant's confession, in open court with both parties present after deliberations had begun. The Supreme Court approved this procedure with-

out commenting on the timing of the jury's review of the exhibits. *Smith, supra,* found no abuse of discretion in the trial court's granting the jury's request, after deliberations had begun, for a copy of an inculpatory statement made by the defendant.

These decisions give the trial court considerable discretion. We perceive little difference in the procedures described above and the one used in the case at bar. Pollard has not stated how he was harmed by this procedure, and no harm is apparent to us. We conclude that no abuse of discretion has been demonstrated.

*Issue VI. Sufficiency of the evidence*

Pollard's argument on the sufficiency of the evidence is two-fold as follows: (A) insufficient evidence of intoxication, and (B) insufficient proof of causation. When reviewing the sufficiency of the evidence this court does not weigh the evidence or review the credibility of the witnesses; we consider only the evidence most favorable to support the verdict, together with all reasonable inferences to be drawn therefrom. The conviction will be affirmed if there is substantial evidence of probative value from which the trier of fact could reasonably infer the defendant's guilt beyond a reasonable doubt. *Faust v. State,* (1977) 266 Ind. 640, 366 N.E.2d 175.

(A) Intoxication. Pollard's argument that the blood sample drawn and tested more than an hour after the wreck does not prove his intoxication at the time of the wreck, is unpersuasive. Because Pollard was injured and was in the control of police EMTs and hospital personnel from the time of the wreck until the drawing of the blood sample, the trier could infer that Pollard had nothing more to drink after the wreck. Robert Reed, the Indiana State Police chemist, testified that a certain amount of alcohol would burn off from natural bodily functions, and admitted that at the time of the collision Pollard's alcohol level might have been higher or lower than the test results. However, the jury could reasonably infer that a blood alcohol level of approximately the .26 to .27 percent indicated

by the test existed at the time of the collision, and this was more than sufficient to establish the .10 percent prima facie case under Ind.Code 9–4–1–54(g)(1) (Supp.1981). This, coupled with other descriptive evidence of Pollard's actions, clearly is sufficient evidence of intoxication.

(B) Causation. Ind.Code 9–4–1–54(b) (Supp.1981) provides that

"A person who operates a vehicle while intoxicated commits a Class A misdemeanor. However, the offense is a Class C felony if it results in the death of another person...."

The question in issue here is the definition of "results in the death of another person" or causation. The State concedes that some causal relationship is required between the defendant's conduct and the death of another. *Higginbotham v. State*, (1981) Ind. App., 427 N.E.2d 896. The case of *Bailey v. State*, (1980) Ind., 412 N.E.2d 56, construed the term "resulting in bodily injury" as contained in the robbery statute, Ind.Code 35–42–5–1 (Supp.1981). It stated:

"If an injury to any other person arises as a consequence of the conduct of the accused in committing a robbery, the offense is properly regarded as a class A felony. If the injury does not so arise attribution of a class A felony is improper."

*Bailey, supra* at 59. In *Bailey* the court essentially stated that causation is ordinarily a jury question.

In *Moon v. State*, (1981) Ind., 419 N.E.2d 740, the court held that where the owner of a market fired at the defendant robbers and struck a cashier, the requisite "results in bodily injury" was present and the injury "was a natural consequence of the conduct of the defendant ... in attempting the robbery." *Id.*, at 742. The court speaking through Justice Hunter further stated:

"The statutory attribution of responsibility for any bodily injury which flows from a robbery or attempted robbery no doubt reflects the legislature's recognition that regardless of the perpetrator's design, the crime of robbery has inherent potential for violence. Victims may re-

sist, police or bystanders may intercede. Neither these responses nor the concomitant likelihood that some bodily injury will occur can be regarded as unnatural or improbable consequences of the perpetrator's conduct."

419 N.E.2d at 742.

Obviously, under *Moon*, contributing fault by the victim is not fatal to the State's case. Similarly, contributory negligence is no defense to wilful or wanton conduct. *McKeown v. Calusa*, (1977) 172 Ind.App. 1, 359 N.E.2d 550, or a criminal prosecution. *State v. Plaspohl*, (1959) 239 Ind. 324, 157 N.E.2d 579 (a reckless homicide prosecution for drag racing in automobiles). This is so even if the victim's participation was intentional. *Plaspohl, supra.*

*Higginbotham, supra,* applied the *Bailey-Moon* test to the driving-while-intoxicated statute, Ind.Code 9–4–1–54(b), in construing the phrase, "results in the death of another person." As in *Moon*, the statute evinces a legislative recognition that regardless of the driver's design, the offense of operating a vehicle while intoxicated has inherent potential for injury and death. The intoxicated driver's judgment is flawed, his reaction time, vision, and control are impaired. In the vicinity of shopping centers and other business, where a restricted speed zone exists, automobiles enter and leave the public highway in great numbers, as shoppers, such as Betty Warren, attend to their business. There was testimony that Pollard entered such an area at an unexpectedly high speed, out of control, and in an impaired condition. This was evidence from which the trier reasonably could have concluded that the injury and death of Betty Warren was a natural and probable consequence of Pollard's intoxication and, therefore, within the ambit of the phrase "results in the death of another person."

Finally, under his sufficiency of the evidence arguments, Pollard attempts to raise alleged instructional errors not raised in his motion to correct errors. Such errors are waived. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7); *Morris v. State*, (1979)

Ind., 384 N.E.2d 1022; *Rutledge v. State*, (1975) 164 Ind.App. 468, 329 N.E.2d 603. He asserts that these alleged errors constitute fundamental errors, but presents no cogent argument. We decline to address these issues. A.R. 8.3(A)(7); *Millar v. State*, (1981) Ind., 417 N.E.2d 1105.

For the above reasons, this cause is affirmed.

RATLIFF, P. J., and ROBERTSON, J., concur.