**Bobby J. RIPPY, Appellant
(Defendant),**

v.

**STATE of Indiana, Appellee (Plaintiff).**

**No. 2–1285–A–390.**

Court of Appeals of Indiana,
Second District.

June 4, 1986.

Rehearing Denied July 15, 1986.

Nancy L. Broyles, McClure, McClure & Kammen, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Office of Attorney General, Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendant-appellant Bobby J. Rippy (Rippy) appeals his trial court conviction for operating a vehicle while intoxicated resulting in the death of another,[1] a class C felony, claiming insufficiency of the evidence to establish any causal connection between his intoxication and the death of Gladis Hogan (Hogan).

We affirm.

## FACTS

The facts most favorable to the State reveal that sometime between 11:00 p.m. and 11:30 p.m. on April 6, 1984, David Hogan (David) and his mother, Hogan, attempted to cross Michigan Street where it diagonally intersects with Eastern Street in Indianapolis. At this location, Michigan Street is a four lane westbound roadway with the northernmost and southernmost lanes occupied by parked vehicles. David crossed Michigan slightly ahead of his mother when he turned and saw her body bounce off of a Camaro driven by Rippy.

Mary Jo Highsaw (Highsaw) was driving her automobile in the northernmost traffic lane of Michigan Street. She saw Rippy in the southernmost traffic lane of Michigan Street and stated she reduced her speed "when I seen him because he was speeding." Record at 141. She stated that Hogan "was just barely in the left hand lane" when Rippy's Camaro hit Hogan. Record at 143. Rippy was alone in the vehicle. Highsaw indicated that Rippy was going about thirty miles per hour and could have avoided the accident only by swerving off the right-hand side of the street and hitting a pole. However, Highsaw also stated that she could see Hogan and that had Hogan been in her travel lane, she could have stopped her car in time to avoid an accident.

Randy Leavitt (Leavitt) observed Rippy turn from Rural Street onto Michigan Street immediately before the accident. Leavitt stated that "I didn't actually see him but I heard it sound like the tire nipped the curve and come off of it. It sounded like he hit the pole but he didn't. It was the tire nipping the curve." Record at 186. Donna Courtney (Courtney), an Indianapolis Police Department accident investigator, related that Rippy informed her Hogan ran out in front of his car and he did not have time to stop before his car hit her. At the scene of the accident, Courtney observed that Rippy had a strong odor of alcohol on his breath and that he was somewhat unsteady in his walk. At her request, Rippy took a breathalyzer test which gave a result of .15 per cent.

A bench trial occurred on May 2, 1985. Dr. John Pless (Pless), a forensic pathologist who performed an autopsy on Hogan, testified that Hogan suffered extensive injuries. Her body was literally ripped apart just below the waist, and she suffered secondary injuries because of the whiplash effect on the body "due to the high velocity of the shearing force which dropped the lower body." Record at 205. Pless testified that such shearing forces were the product of a high velocity and that velocity

1. Ind.Code 9–11–2–5 (Supp.1985) (formerly IC 9–4–1–54(b) (1982)) [hereinafter cited as the resulting-in-death statute].

was the result of speed. *Record* at 207. In addition, Hogan also suffered injuries resulting from her body bouncing off of cars parked at the side of Michigan Street. The autopsy also revealed that Hogan had a blood alcohol content of .145 per cent at the time of her death.

Rippy took the stand in his own defense and denied telling Courtney that he had hit anyone. Rippy admitted he had been drinking that evening and had consumed four or five beers over a period of four or five hours. Rippy also presented the testimony of Dale Braun (Braun), an accident reconstruction expert who, based upon the evidence collected by other individuals, concluded that Rippy's Camaro had not hit Hogan. At the conclusion of the evidence, the case was taken under advisement, and Rippy was later found guilty as charged.[2] This appeal ensued.

### ISSUE

Rippy presents one issue for our consideration:

Whether the evidence is sufficient to sustain Rippy's conviction under the resulting-in-death statute?

### DECISION

PARTIES' CONTENTIONS—Rippy asserts the State must prove that he was driving while intoxicated and that he caused Hogan's death by driving in an improper manner as a result of his intoxication. He claims the evidence is insufficient to show Hogan's death was a result of his intoxication or, indeed, of any of his actions.

The State responds that the evidence is sufficient to establish that Hogan's death was the natural and probable result of Rippy's intoxicated condition.

CONCLUSION—The evidence is sufficient to establish that Hogan's death was caused by Rippy's conduct; therefore, the evidence is sufficient to sustain Rippy's conviction under the resulting-in-death statute.

Our standard of review for questions of sufficiency of the evidence is well known. *See Fought v. State* (1984), Ind.App., 468 N.E.2d 247. The focus of our inquiry is the resulting-in-death statute which provides that "[a] person who violates section 1 [IC 9–11–2–1] or section 2 [IC 9–11–2–2] of this chapter commits a Class C felony if the crime results in the death of another person."[3] The crux of Rippy's attack is the question of causation, and it is to that subject which we now turn.

In *Higginbotham v. State* (1981), Ind.App., 427 N.E.2d 896, the former version of the resulting-in-death statute was considered by this court. In relevant part, IC 9–4–1–54(b) provided that "[a] person who operates a vehicle while intoxicated commits a Class A misdemeanor. However, the offense is a Class C felony if it results in the death of another person." The court held that the causation required was a showing that the death flowed *from the defendant's intoxication.* In essence, a "but-for" test was prescribed. *See also Orr v. State* (1984), Ind.App., 472 N.E.2d 627, *trans. denied; Pollard v. State* (1982), Ind.App., 439 N.E.2d 177. The Indiana Supreme Court has recently rejected the *Higginbotham* analysis as applied to the "results in" language of IC 9–4–1–54(b)(2), the companion provision to the resulting-in-death statute which provided an increased penalty for one driving while intoxicated resulting in serious bodily injury. Justice Shepard, writing for the majority, adopted a less rigorous test:

"*The statute creates a crime—driving while intoxicated—and adds higher penalties if the commission of this of-*

---

**2.** In addition to his conviction under the resulting-in-death statute, Rippy was also convicted of operating a motor vehicle while intoxicated and having a prior conviction, a class D felony. IC 9–11–2–3. However, that conviction is not contested in this proceeding.

**3.** IC 9–11–2–1 provides that "[a] person who operates a vehicle with ten-hundredths percent (.10%), or more, by weight of alcohol in his blood commits a Class C misdemeanor." IC 9–11–2–2 declares that "[a] person who operates a vehicle while intoxicated commits a Class A misdemeanor."

*fense results in* serious injury or *the death of another person.* There is, of course, a need to show causation; in the typical case a showing that the driver ran into the victim would suffice. We find nothing in the statute to indicate that the General Assembly intended to require that the State prove a causal link between the driver's intoxication and the fact that injury resulted from his driving. . . . .

Analysis of this statute should focus on the driver's acts and not on speculation about whether he could have stopped if he had been sober. *If the driver's conduct caused the injury, he commits the crime* ; if someone else's conduct caused the injury, he is not guilty."

*Micinski v. State* (1986), Ind., 487 N.E.2d 150, 154 (Givan, C J. and Pivarnik, J. dissenting on other grounds) (emphasis supplied). In *Micinski,* the court specifically overruled *Higginbotham* to the extent it suggested that the focus in interpreting the statute should be anywhere other than on "the driver's acts." So we conclude the causation standard for the resulting-in-death statute, which parallels the language of the statute in *Micinski,* is also to be so construed. To establish the crime of operating a motor vehicle while intoxicated resulting in death, the State must prove that: (1) the defendant was driving while intoxicated and (2) his act of doing so resulted in the death of another person.

Here, the evidence is clear that Rippy was driving while intoxicated. Courtney testified Rippy had a strong odor of alcohol on his breath and a somewhat unsteady walk at the scene of the accident. Rippy's breathalzyer test result was .15 per cent. The evidence could also lead one to conclude that Rippy's act of driving resulted in Hogan's death in that she died as a result of being struck by the car. The testimony of Pless and Highsaw established that fact. Thus, the evidence demonstrated the level of causation mandated by *Micinski.*

Rippy claims that Hogan's own intoxication was an intervening cause of the accident. However, causation is a question for the trier of fact. *Pollard, supra.* Here, as in *Micinski,* Rippy presented a theory that the victim was at fault. As in *Micinski,* the trier of fact was entitled to reject Rippy's theory of defense based upon the evidence presented. *Micinski, supra.*

The judgment of conviction is affirmed.

SULLIVAN and SHIELDS, JJ., concur.