**Bruce Allen KIMBLE, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 278S31.**

Supreme Court of Indiana.

April 4, 1979.

Noble R. Pearcy, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Alembert W. Brayton, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

Bruce Allen Kimble, defendant, was tried by jury. A verdict was entered in which he was found guilty of first-degree murder and first-degree burglary. He was sentenced to life imprisonment on the murder charge and ten to twenty years' imprisonment on the burglary charge. His appeal to this Court focuses upon one issue: Did the trial court err in allowing into evidence a redacted transcript of witness Donna Summers's testimony from a former trial?

The facts most favorable to the state show that two elderly women (87 years of age and 85 years of age) were burglarized, beaten, and murdered in their home at 2937 Washington Boulevard, Indianapolis, Indiana, on or about midnight of October 3, 1975. One of the victims was blind and lame, and the other victim had suffered a stroke and had impaired vision.

The defendant and two other men broke into the women's home, took three radios and a jewelry box, and brutally attacked the women. One victim, who was stabbed, died the night of the burglary; the other victim, blind and helpless, was left for dead, having suffered a senseless, savage, and sadistic beating resulting in multiple cerebral injuries, a fractured rib, and a broken jaw. The second victim died two weeks after the attack without ever regaining coherency.

The evidence shows that very shortly after the three men left the burglarized premises they visited the nearby home of Donna Summers. Although they attempted to leave the jewelry box with Summers, she would not take it; instead, she put it outside and told the men to leave.

Christopher Petty, Summers's boyfriend, was at Summers's home when the jewelry box incident occurred. He testified in court regarding the events but was unable to identify the defendant as one of those present. A statement, which he had given to the police on October 6, 1975, was also introduced in which he stated that one of the participants was named Bruce.

An accomplice in the murders, James Coleman, testified at trial as part of a plea bargain agreement. Coleman related the events of the crime. He stated that the third co-perpetrator had taken a jewelry box from the house and told Coleman and Kimble that he had killed one of the ladies. "Then Bruce Kimble came outside the house . . . and Bruce said since you killed one of the ladies, I'll go back and kill the other one." He stated that Kimble went back inside and more noise and screaming were heard. The three men then left the scene of the murders and went to Donna Summers's house. Coleman substantiated Summers's and Petty's statements regarding the fact that the men stayed at Summers's only a short time and were told to leave.

The defendant's argument is that Donna Summers's testimony, admitted via a transcript redacted from the defendant's earlier mistrial, was improperly before the jury. We disagree. The trial court conducted an extensive hearing before it ruled that the state had used due diligence in attempting to locate Summers. Some of the facts elicited at that hearing were the following: (1) Summers had been subpoenaed through the sheriff and the United States mail and had not been available for process; (2) her last known residence was checked; (3) her mother was contacted and did not know her whereabouts; (4) Christopher Petty, her boyfriend, stated that he had not seen her in six months; (5) registration in adult educational courses in Marion County was checked; (6) the city directory, the crisscross directory, the telephone directory, and a canvassing of the neighborhood and potential places of employment did not reveal her; (7) the post office stated that Summers had left no forwarding address; (8) all the utility companies were called and there was no account for Donna Summers or D. Summers; (9) Summers had never obtained

an operator's permit and had no car and no plates and was not listed with the Bureau of Motor Vehicles; (10) the Social Security Administration advised the investigator that Summers was not employed; (11) a check with the police department records reveals was Summers was not and had not been a defendant in any cause but had been a victim; (12) leads from the county welfare and township trustee's office led investigators to an address on College, and at least a dozen unsuccessful attempts were made to ascertain whether Summers was there; (13) the Drug Enforcement Administration informed the investigators that Summers was not on record with them; and (14) although it was discovered that welfare checks were being sent to the College address (also Summers's mother's address), ostensibly for the witness who has a small child, Summers's mother's name is also Donna Summers.

The trial court had insisted, before ruling on the admissibility of the prior testimony, that the state present evidence that the welfare rolls and drug programs be checked. The court found, after hearing all the evidence regarding attempts to locate Summers, that the state exercised a good faith effort in trying to locate the witness. It was also noted that the defendant had an opportunity to confront and cross-examine Summers at the earlier trial where Summers was under oath. The trial court then read into the record a redacted transcript of Summers's testimony. The trial court did not abuse its discretion in admitting the former sworn testimony of an unavailable witness. *Vautaw v. State,* (1978) Ind., 381 N.E.2d 487; *Burnett v. State,* (1974) 162 Ind.App. 543, 319 N.E.2d 878.

In addition, from our examination of the record, we conclude that Summers's testimony was corroborated in its essential details by both Petty and Coleman. The defendant himself admitted that he was with Coleman and the other accomplice on the night of the crime, that they were in the vicinity of the burglary, and that they went to Summers's residence and saw both Donna Summers and Christopher Petty.

For all of the foregoing reasons, there was no trial court error, and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.