**Burnace Ralph McDONALD, Petitioner,**

v.

**STATE OF TENNESSEE et al., Respondents.**

No. 79–3656.

United States District Court,
M. D. Tennessee,
Nashville Division.

Feb. 22, 1980.

---

Burnace Ralph McDonald, pro se.

Michael J. Passino, Asst. Atty. Gen., Nashville, Tenn., for respondents.

## MEMORANDUM

WISEMAN, District Judge.

In this petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254, petitioner complains of his confinement under a conviction of the Hickman County Criminal Court for second degree murder and assault with intent to commit second degree murder. He received concurrent sentences of life imprisonment on the first charge and 2–5 years on the second. His conviction was appealed and affirmed by the Tennessee Court of Criminal Appeals and certiorari denied by the Tennessee Supreme Court. Thereafter, petitioner has filed two petitions for postconviction relief in which he was represented by appointed counsel. On the first such petition, an evidentiary hearing was held on the question of the effectiveness of counsel. From an adverse ruling by the trial court, an appeal was had to the Court of Criminal Appeals which affirmed the trial court, and certiorari denied by the Supreme Court. On the second application, no evidentiary hearing was held but the application was denied, and again an appeal was taken to the Court of Criminal Appeals and the trial court affirmed. No petition for certiorari was filed. Petitioner has exhausted state remedies and the petition is properly before this Court. The defendants have filed the trial transcript, the transcript of the postconviction evidentiary hearing, the briefs before and opinions of the trial and appellate courts on all previous actions and appeals.

Petitioner here asserts seven grounds for relief: (1) his sentence of life imprisonment for second degree murder is cruel and unusual punishment; (2) procedural errors were committed in the court's charge and other matters at trial; (3) he was rendered ineffective assistance of counsel; (4) he was mentally incompetent to stand trial; (5) he was insane at the time the offense was committed; (6) the evidence was insufficient to convict beyond a reasonable doubt; and (7) improper remarks of the prosecutor deprived him of a fair trial. Defendant has moved for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure,

and Rule 8(a), Rules following 28 U.S.C. § 2254. This Court now addresses the issues raised by petitioner.

### 1. Cruel and Unusual Punishment.

 Petitioner complains that a life sentence for second degree murder violates the Eighth Amendment. At the time of petitioner's conviction, T.C.A. § 39–2408 provided for imprisonment for life or not less than ten (10) years for conviction of second degree murder. The jury fixed petitioner's sentence at life, which was within the statutory limits. The legislature of Tennessee, in its representative capacity for the people of this State, has fixed the punishment for a violent homicide with a firearm, involving malice. For the Court to find this punishment violative of the Eighth Amendment prohibition against cruel and unusual punishments, it must appear that the punishment is so disproportionate to the crime involved as to offend the conscience and evolving sensibilities of an enlightened society. See Brown v. Wainwright, 576 F.2d 1148 (5th Cir. 1978). Such an assertion is patently without merit in this instance and this ground for relief by petitioner is rejected.

### 2. Procedural Errors.

Petitioner complains of the trial court's instruction to the jury with respect to the presumption of malice from the use of a deadly weapon, and that such instruction shifted the burden of proof to him on the issue of malice. The court's charge on this question was as follows:

*MURDER IN THE SECOND DEGREE*

Malice is an essential ingredient of murder in the second degree, and may be either express or implied. A man may intentionally kill another under such circumstances that will make the killing murder in the second degree. If one person, upon a sudden impulse of passion, without adequate provocation, and disconnected with any previously formed design to kill, kills another willfully and maliciously, such killing will be unlawful, and will be murder in the second degree, although the slayer is actuated by express malice against the party killed.

As before stated, implied malice may be an essential element of murder in the second degree. This is where the slayer does not intend to slay the person killed. This occurs where a party does an unlawful act, which may probably result in depriving some person of life, or performs an act, lawful in itself, in such a reckless and careless manner that it may probably result in depriving some person of life, and if, in such case, some person is killed, the person thus causing the death will be guilty of murder in the second degree.

In such case the law regards the conduct of the party causing the death, of such a character as to indicate a depraved and wicked mind and heart, regardless of social duty, fatally bent on mischief, and hence says that when death is thus caused the party thus causing it is guilty of murder in the second degree; that is, murder in which implied malice is the essential element.

If the slayer, with premeditated intent to slay a certain person, by misadventure and undesign, slay another person, such slaying will be murder in the first degree.

Malice aforethought, as applied to the crime of murder in the second degree, covers all cases where the act is done under such cruel circumstances as are the ordinary indications of a wicked, depraved and malignant spirit, as when the punishment inflicted by a party, even upon provocation, is outrageous in its nature and continance (sic), and beyond all proportion to the offense, so that it is to be attributed to malignity and brutality, rather than human infirmity.

When the use of a deadly weapon by the party killing, is shown, and the death is clearly shown in the proof to have resulted from its use by the slayer, the use of such weapon may be considered by the jury to establish that the killing was done maliciously; that is, with that malice required to support murder in the second degree. But where the death and its manner, and all the surrounding and accompanying circumstances, are shown

in the proof, then malice is not presumed, but the jury are to determine from them whether or not it was present as an ingredient of the offense.

Malice cannot be inferred from the deadly intent, merely, because the deadly intent may be justifiable under the law, as when one willfully kills another to save his own life, or to save himself from great bodily harm, and the danger is imminent and immediate; or when the intent to kill is produced by anger; for it were (sic) sudden and upon reasonable provocation, the killing would not be murder, but manslaughter.

(TR. 284–86).

In *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the Supreme Court held that a state must persuade the jury beyond a reasonable doubt. as to all elements of the crime. There the defense was heat of passion without criminal intent and the charge of the court under Maine law was that malice aforethought could be conclusively implied from proof that the homicide was both intentional and unlawful. Applying *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the Court held the Maine rule requiring *defendant to prove heat of passion or sudden provocation* denied due process.

In *Hankerson v. North Carolina*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977), the Court applied *Mullaney* retroactively to convictions prior to its rendition. The defense in *Hankerson* was self-defense. The North Carolina Supreme Court had considered a charge given in the trial court that malice could be presumed from an intentional homicide with a deadly weapon, and that the burden of proof was on the defendant to prove self-defense.

In the case at bar, the defense is both insanity and accidental homicide. No objection was made to the charge. The Court of Criminal Appeals decision on the case was filed July 8, 1976, after *Mullaney* but before *Hankerson*. The opinion correctly stated Tennessee law, pre-*Mullaney*:

All homicides are presumed to be malicious *in the absence of evidence which* *would rebut the implied presumption.* And, if a weapon is handled in a manner so as to make the killing a natural and probable result of such conduct, malice will be presumed from the use of the weapon. *Everett v. State*, 528 S.W.2d 25 (Tenn.1975); *Sikes v. State*, 524 S.W.2d 483 (Tenn.1975).

*McDonald v. State*, Nos. 5749, 5750, at 4 (Tenn.Crim.App. June 8, 1976) (emphasis added).

█ In light of *Mullaney* and *Hankerson*, this exposition is now clearly erroneous. There can no longer be a shifting of the burden of proof to the defendant as to any essential element of a criminal offense.

█ This is not to say, however, that this element of malice, along with such other elements as criminal intent, may not be *inferred* from circumstantial evidence. The intentional use of a deadly weapon resulting in a homicide is one circumstance from which the trier of fact may *infer* malice. The question then becomes whether this inference, taken along with all of the other facts and circumstances in the case, whether from the proof of the state or the proof of the defendant, if any, constitutes proof beyond a reasonable doubt of the existence of the essential element of the offense. Such an inference, unexplained by any proof or advanced theory on the part of the defendant, may in and of itself be of such a convincing nature as to satisfy the trier of fact on this score. This would be for the trier of fact to determine from all the circumstances, and be the subject of proper review under the standards of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), as to whether any rational trier of fact could have so found. Stated thusly, the principle is no longer one of "presumption" requiring proof to overcome or the jury must find the existence of the essential fact. It becomes a matter of circumstantial evidence from which the jury may or may not infer the essential fact.

█ Applying this standard to the instruction given by the court in the case at

bar, the instruction may be somewhat lacking in clarity, whether in its delivery or transcription. However, the quoted portion does not offend the principle of *Mullaney* and comports with the rationale set out above. The court explained that "use of a deadly weapon . . . and the death is clearly shown in the proof to have resulted from its use by the slayer, the use of such weapon *may be considered by the jury* to establish that the killing was done maliciously; . . ." (Tr. 285–86) (emphasis added).

When the other surrounding circumstances are considered, *inter alia,* the number of shots fired, their entry and exit holes, the statements of the defendant before and after the homicide, and the conduct of the defendant after the homicide, a rational trier of fact could well have found beyond a reasonable doubt that the defendant's theory of accident was negated and that the essential element of malice had been proven. *Jackson v. Virginia, supra.*

■ Petitioner also complains of the court's charge in respect to the availability of parole. This charge, at that time required by T.C.A. § 40–2707, was later held unconstitutional by the Tennessee Supreme Court. *Farris v. State,* 535 S.W.2d 608 (Tenn.1976). The decision was not given retroactive effect. Such a charge does not rise to unconstitutional denial of a fair trial. *Christopher v. Davis,* No. 3–79–483 (E.D. Tenn., filed Jan. 10, 1980). *See also Clark v. Lockhart,* 512 F.2d 235 (8th Cir.), *cert. denied,* 423 U.S. 872, 96 S.Ct. 139, 46 L.Ed.2d 103 (1975).

The other alleged procedural errors do not rise to constitutional significance.

### 3. *Ineffective Assistance of Counsel.*

An evidentiary hearing was conducted on petitioner's first postconviction petition on the question of effectiveness of counsel. The trial court made findings of fact and an appeal was had to the Court of Criminal Appeals and certiorari denied by the Tennessee Supreme Court on this issue. 28 U.S.C. § 2254(d) provides that such a determination of a factual issue shall be presumed by this Court to be correct unless it shall be made to appear that certain specified defects appear or unless, after review of the record, this Court concludes that such factual determination is not fairly supported.

■ This Court has thoroughly reviewed the evidentiary hearing on this question, the transcript of the trial, the appellate briefs and opinions. The petitioner has had a full and fair hearing on this question, the findings of the trial court are amply supported by the record, and this Court agrees therewith. This assignment is rejected.

### 4 & 5. *Incompetence to Stand Trial and Insanity at Time of Offense.*

The issue of petitioner's sanity at the time of the offense was raised at trial and was reviewed on appeal, and certiorari denied by the Tennessee Supreme Court. The opinion of the Court of Criminal Appeals contains a succinct review of the relevant evidence on this question:

> Additionally, the defendant's argument that the State failed to prove his sanity beyond a reasonable doubt is without merit.
>
> The sum and substance of the testimony regarding the defendant's mental status was essentially to the effect that when the defendant was drinking, he was prone to be violent, and acted in an irrational and unreasonable manner. There was no medical testimony to show that the defendant did not know right from wrong.
>
> Dr. Parker D. Elrod was the only medical witness who testified. He was offered as a State's witness to prove the cause of death, but he also testified about being previously acquainted with the defendant. He stated that on a previous occasion he had signed papers to commit the defendant to Central State Hospital for an examination as to his sanity "because of the way he had been acting." Sheriff Atkinson testified that the defendant stayed in Central State Hospital from October 1, 1973, to October 30, 1973.

Apparently that examination did not show any evidence of insanity, else the defendant would have produced witnesses and pursued that line of inquiry at the trial. Sheriff Atkinson testified that on other occasions in the past the defendant had been seen by a doctor, by two psychiatrists at Columbia, and that the mental health doctors in Hickman County had sent him on one occasion to a hospital at Columbia, where he stayed about one week. The defense called no witnesses to testify regarding any of these medical examinations. We can only conclude that these prior medical examinations dealt with the defendant's drinking problem and that his counsel could not develop any evidence from these examinations that would aid in developing a defense of legal insanity.

The defendant's attempt to establish through some lay witnesses that he did not know right from wrong was negated by other evidence. His aunt, Mrs. Dennis George, testified that the defendant did not act as if he knew the difference between right and wrong on the night of the shootings; however, she further stated that he did know the difference when he was sober, adding that "he's very intelligent." Sheriff Atkinson testified that the defendant was "pretty well a gentleman when not drinking," but that he had a problem when not confined because he could not leave alcohol alone.

The defendant's testimony at the trial is clear and intelligible. He was able to recall in minute detail his version of the events that occurred before, at, and after the shootings. He admitted that he could distinguish between right and wrong, but stated that society's viewpoints often are wrong and that he tries to correct them. He also testified that when he is drinking he is like a "robot" and has no control over himself, and that when he is drinking he enjoys terrifying other people.

The evidence, including the defendant's own testimony, showed that immediately after the shootings he recognized that he had done wrong, and then proceeded to do several rational things in order to get away. After the shootings, he returned to his house and asked his mother for money, telling her he needed it in order to get away. He then returned to the deceased's trailer, removed the truck keys from the deceased's pocket, and drove the truck back to his own house. Upon arriving there, he tore the telephone off the wall, testifying that he did that "so nobody could call the sheriff or the law, I was going to try to get away." Next, the defendant went to his aunt's house and asked for the keys to her automobile and wanted her to give him what money she had so that he could get away. He also took the telephone off the wall at his aunt's house. Soon thereafter, the defendant went to an uncle's house and then decided to turn himself in. He asked his uncle to call the sheriff, and in response to his uncle's inquiry as to what was wrong, the defendant said, "I've killed a man."

We do not think it necessary to enumerate other acts of rationality exhibited by the defendant soon after the shootings. The jury was entitled to consider the words and acts of the defendant immediately before, at, and immediately after the shootings in deciding the defendant's mental status. As stated in *Mullendore v. State*, 183 Tenn. 53, 60, 191 S.W.2d 149, 151 (1945), these things "are the best evidence of whether he was or was not of rational mind at the time of the crime."

The question of a defendant's sanity or insanity at the time of a crime is one for the jury to resolve from the facts and circumstances present in a case upon proper instructions from the court. *Humphreys v. State*, 531 S.W.2d 127 (Tenn.Cr.App.1975). In the present case, the jury found the defendant to be sane and in our opinion the evidence well supports that finding.

*McDonald v. State*, Nos. 5749, 5750, at 5–7 (Tenn.Crim.App. June 8, 1976).

In his first petition for postconviction relief, petitioner raised the question of his sanity through his assertion of ineffective

assistance of counsel. He insisted that counsel should have further investigated his insanity defense, and that counsel should have moved for a psychiatric evaluation. His counsel examined records of petitioner's treatment at Columbia Mental Health Center and these were made a part of the record in the postconviction evidentiary hearing. These records indicate an alcoholism problem and a pattern of violent behavior while under the influence of alcohol. However, they do not contain any indication that petitioner meets the legal tests for establishing a defense of insanity. Furthermore, counsel for petitioner discussed with him the possibility of a defense of insanity and a psychiatric evaluation. Petitioner specifically declined such an examination in writing, stating that he had been examined by a psychiatrist who found "nothing wrong with me" and he felt "that they will react—reach the same conclusion." (TR. 90, Exh. 6). Counsel found nothing to indicate that the defense of insanity could be maintained. (TR. 92, Exh. 6). The court held defendant waived psychiatric evaluation.

■ This Court has carefully reviewed the entire record in this cause and particularly noted the testimony of petitioner himself at both evidentiary hearings. Petitioner is not an uneducated man. He has a master's degree and has held responsible jobs which he has apparently lost because of his excessive drinking. His testimony at trial was lucid and intelligently responsive. He indicated a clear memory of all events before and after the incident. His assertion of incompetency at the time of the trial cannot be credited in light of the obviously lucid testimony he gave.

The trial court charged the jury on the defense of insanity under the then accepted Tennessee application of the M'Naghten rule. The Supreme Court of Tennessee has since adopted the ALI Model Penal Code tests for the determination of insanity in a most enlightened and well-reasoned opinion by Justice Henry. *Graham v. State*, 547 S.W.2d 531 (Tenn.1977). This holding was specifically denied retroactive application.

*Id.* at 544. *See also Forbes v. State*, 559 S.W.2d 318 (Tenn.1977).

■ A consideration of the entire record supports the finding of the jury of sanity at the time of the offense under the M'Naghten standard. Had a charge been given on the new standard, the evidence is also sufficient, in this Court's review, to have supported a finding of sanity thereunder, if such had been made. Nevertheless, retroactivity is not compelled by constitutional considerations and the conviction will not be disturbed on this ground.

■ Although not raised by the petition now before the Court, in the interest of consistency the Court addresses another potential problem raised by a postconviction attack when insanity is a defense. The trial court in this case charged the jury that there is a *presumption* of sanity until evidence is introduced either by the defendant or by the state fairly raising doubt on the issue of insanity. At this point the presumption of sanity ceases to exist and the state has the burden of establishing sanity beyond a reasonable doubt. This rule was restated with approval by the Tennessee Supreme Court in the *Graham* case. *Graham v. State, supra,* at 544. The question arises as to whether this rule has the effect of shifting the burden of proof of an essential fact to the defendant to "fairly raise a doubt" as to sanity, and thus runs afoul of the holdings of *Winship, Mullaney,* and *Hankerson, supra.* Reasoned reflection finds no such conflict.

It would be an absurd distortion of the requirements of due process to hold the prosecution in every criminal case to prove every possible negative and to disprove every possible defense and that might conceivably be raised by a defendant. Such a holding would onerate the prosecution with an almost impossible burden, unnecessarily confuse juries, and lengthen criminal trials beyond the capacity of the criminal justice system, all without concomitantly significant protection to the due process rights of defendants. The necessity for a defendant to present at least some evidence to raise a factual issue before requiring the state to

negate the issue beyond a reasonable doubt is suggested by the *Hankerson* court. 432 U.S. at 237 n.3, 97 S.Ct. at 2342 n.3, 53 L.Ed.2d at 312 n.3. The Tennessee instruction as given in this case, and as approved by Justice Henry in *Graham,* comports fully with this suggestion in *Hankerson* and also comports with the rule of reason. Most people are sane, at least under the definition of M'Naghten and most probably under the ALI Model Penal Code standard. Reason requires the courts to entertain the "presumption" that this fact holds true at least until the issue is fairly raised either from proof adduced by the state or by the defendant.

### 6. *Jackson v. Virginia Test*

■ This Court has applied the standard of *Jackson v. Virginia, supra,* to the case at bar and finds that a rational trier of fact could reasonably have found petitioner guilty beyond a reasonable doubt.

### 7. *Prosecutor's Remarks*

■ The complaint by petitioner with respect to the prosecuting attorney's remarks in closing argument was considered and rejected in his second petition for postconviction relief, both at the trial court and on review by the Tennessee Court of Criminal Appeals. He questions being called a "bully" and a "coward" by the prosecutor. Although these appellations may have been objectionable and less than desirable restraint on the part of the prosecutor, they do not rise to constitutional significance as a clear denial of a fair trial.

Having considered each of the complaints raised by the petitioner in this challenge to his custody under state law, and having found no merit therein, the motion for summary judgment of defendant will be granted.