Bruce KIMBLE, Appellant,

v.

STATE of Indiana, Appellee.

No. PS 493.

Supreme Court of Indiana.

July 21, 1983.

Bruce Allen Kimble, in pro. per.

Linley E. Pearson, Atty. Gen. of Indiana, Stephan E. Wolter, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellant Bruce Allen Kimble was convicted of first-degree murder and first-degree burglary at the conclusion of a jury trial in Marion Superior Court on September 1, 1977. He was sentenced to life imprisonment. Upon appeal to this Court, his conviction was affirmed. *Kimble v. State,* (1979) 270 Ind. 539, 387 N.E.2d 64. A hearing was held on appellant's motion for post-conviction relief under Ind.R.P.C. 1 in January and February, 1981. This motion was denied in December, 1981, and the appellant instituted a *pro se* appeal.

Seven errors are asserted in the denial of post-conviction relief but we find only the following five to be properly before us:

1) whether the trial court erred when it found that no fundamental error occurred when the final instructions were not read to the jury;

2) whether the trial court erred when it found no fundamental error occurred when final instruction 20, dealing with the ways a sentence may be reduced, was given to the jury;

3) whether the trial court erred when it found that appellant was not denied effective assistance of counsel;

4) whether the trial court erred when it would not allow appellant to represent himself with the aid of a legal assistant; and,

5) whether the accumulation of the four errors amounts to a denial of a fair trial.

We find that two of the asserted errors, dealing with prosecutorial misconduct, should have been raised on direct appeal of appellant's 1977 conviction for murder and burglary. The post-conviction relief process is not a substitute for a direct appeal, but is a process for raising issues not known at the time of the original trial and appeal or for some reason not available

to the defendant at that time. *Riner v. State,* (1979) 271 Ind. 578, 582, 394 N.E.2d 140, 144; *Bradberry v. State,* (1977) 266 Ind. 530, 539, 364 N.E.2d 1183, 1188. The record reveals that after the appellant was convicted of murder and burglary, his attorney cited prosecutorial misconduct in the motion to correct errors. However, upon direct appeal, appellant did not pursue this claim. Therefore, we find that the issues dealing with the alleged prosecutorial misconduct have been waived.

As with all post-conviction hearings, the burden of proof is on the petitioner by a preponderance of the evidence. *Lenoir v. State,* (1977) 267 Ind. 212, 213–14, 368 N.E.2d 1356, 1357; *Perkins v. State,* (1975) 263 Ind. 270, 271, 329 N.E.2d 572, 573. The trial court is the trier of fact and sole judge of the weight of the evidence and credibility of the witnesses. A judgment of the trial court will not be disturbed unless the evidence is without conflict and leads inescapably to a conclusion which is contrary to that reached by the trial court. *Perkins v. State, supra; Hoskins v. State,* (1973) 261 Ind. 291, 295, 302 N.E.2d 499, 501. *See Turner v. State,* (1972) 259 Ind. 344, 346, 287 N.E.2d 339, 341.

## I

At the conclusion of the trial, the following exchange took place concerning the reading of the final instructions:

[Prosecutor Hill]: Are you going to read the instructions?

Court: If you want me to. Mr. Mayer?

[Defense counsel Mayer]: Oh, Judge, I don't care if you read them or not, we have all been here a long time, I'm going to comment on them in my argument, so I don't care if the Court reads them or not.

Mr. Hill: Me too, Judge, I'm going to comment on the instructions.

Court: So both parties would waive re-reading of the preliminary instructions and waive reading of the final instructions?

Mr. Hill: Sure, Judge.

Mr. Mayer: I think so.

Appellant claims that it was fundamental error to waive the reading of the final instructions and cites *Purdy v. State,* (1977) 267 Ind. 282, 369 N.E.2d 633, for support. Purdy held that the defendant has the clear right to have the final instructions read aloud to the jury. In addition, appellant claims that he did not knowingly waive the reading of the final instructions. Defense counsel Mayer usually discussed waiving the reading of the final instructions with his clients. However, appellant states that Mayer testified at the hearing that he never discussed such a matter with appellant. Appellant misstates the record. The statement Mayer made, and which appellant repeats in the brief, was in response to a different question and did not deal with appellant Kimble at all. What Mayer said was while he could not remember specifically discussing the matter, appellant must have agreed with his decision to waive the reading. Mayer reached this conclusion because he always discussed these matters with his clients before making such a decision. Regardless, we find *Rice v. State,* (1981) Ind., 426 N.E.2d 680, to be controlling. As found here, the defense counsel in *Rice* waived the reading of the final instructions. This Court held that since the decision was made before the clear right in *Purdy* was made known, defense counsel had done nothing wrong and the waiver did not amount to fundamental error. *Id.* 426 N.E.2d at 682. The same rationale applies here. *Purdy* was handed down in December, 1977, and appellant was convicted in September, 1977. There is no error on this issue.

## II

Appellant argues that fundamental error occurred when the following instruction was given to the jury:

### INSTRUCTION NUMBER 20

A person who is convicted of a crime by a jury is sentenced by the judge. In many cases the judge has certain sentencing alternatives which may include proba-

tion, restitution, short sentences, rehabilitation programs, etc. In other cases the law requires the judge to sentence to a term of imprisonment that is either fixed by the law, or set by the jury.

A person who is sentenced to imprisonment for less than life is entitled by law to a reduction of his time based upon a certain schedule and upon his behavior in the institution. Also he is given credit toward his sentence for time spent in jail on this charge. For these reasons it is possible that a person could serve considerably less than the stated sentence. On the other hand, it is also possible that a person could serve the full maximum. In either case it is determined by future events beyond our present knowledge or control.

A person who is sentenced to imprisonment for life will remain in prison for life, unless the governor of this state commutes the sentence upon recommendation of the clemency commission. If this occurs, a person serving life may be paroled. On the other hand, there is no certainty that it will happen, or if it does, when it may happen. This also is determined by future events which are beyond our present knowledge or control.

Therefore, in any case when arriving at your verdict, you should not consider or speculate as to the actual amount of time a person will serve.

Appellant Kimble argues that instruction 20 improperly informed the jury about the possible ways a sentence may be reduced, thus exposing the jury to extraneous material which may have clouded the determination of guilt or innocence. Because the trial court *sua sponte* gave this instruction, appellant feels the error rises to the level of fundamental error.

We disagree. In a recent case, *Bailey v. State*, (1980) Ind., 412 N.E.2d 56, we held that the trial court, in its considered discretion, could give an almost identical instruction. We felt that an instruction of this sort aids the jury in forgetting any concerns over potential punishments. *Id.* 412 N.E.2d at 61. *See also Cooper v. State*, (1977) 265

Ind. 700, 359 N.E.2d 532; *Feggins v. State*, (1977) 265 Ind. 674, 359 N.E.2d 517. The trial court here specifically informed the jury that during its determination of guilt or innocence it was not to consider the actual time Appellant would spend in prison. We find nothing wrong with the giving of this instruction.

### III

In his third argument, appellant Kimble claims that he was denied effective assistance of counsel. Appellant lists seven examples to illustrate his claim. The first two deal with the final instructions. Having already held that the instructions were properly given (*see* Issues I and II, *supra*), we fail to see how they represent ineffective representation of counsel. Therefore, the first two examples will not be considered any further in this issue.

Our consideration of the representation by counsel was well-stated in *Nelson v. State*, (1980) Ind., 401 N.E.2d 666, as follows:

"An attorney is presumed to have rendered competent representation, and only a strong showing to the contrary will rebut that presumption. *E.g., Robertson v. State*, (1974) 262 Ind. 562, 319 N.E.2d 833. We must look to the facts of each case in order to determine whether counsel has provided his client with effective representation. *E.g., Roberts v. State*, (1977) 266 Ind. 72, 360 N.E.2d 825. We will not second-guess counsel's trial tactics or strategy. *E.g., Loman v. State*, (1976) 265 Ind. 255, 354 N.E.2d 205. An isolated mistake or instance of poor strategy does not render representation ineffective or inadequate; and representation is deemed to be adequate, unless the record reflects that the trial was reduced to a mockery of justice. *E.g., Merida v. State*, (1979) [270 Ind. 218], 383 N.E.2d 1043."

401 N.E.2d at 669

### A.

First, appellant claims that counsel did not effectively assist him at trial because he

failed to object to the following colloquy between Deputy Prosecutor Hill and State's witness James Coleman:

Hill: Now haven't you discussed with your attorney and the Prosecutor's Office a reason why you don't want to be at Pendleton and Michigan City [prison]?

Coleman: Well, there's a whole lot of reasons.

Hill: Well why are you holding back, young man?

Coleman: I'm not holding back.

Hill: Well then let's have the reason.

Coleman: Well one of the reasons, which I just said, and the other one, because I have been threatened up in Pendleton by Eric Tyson and Bruce Kimble's friends and those are the two main reasons, need any more reasons?

Hill: I certainly do not, and I don't think the jury does either. Now you answer the questions fully and without holding anything back.

Appellant Kimble contends that the testimony regarding the threats was inadmissible evidence which was intentionally elicited from the witness by the State. Appellant also feels that this testimony was highly prejudicial and obviously inflammatory. Since threats tend to show guilt on the part of the defendant, a proper foundation must be laid to show that the threats were made by the defendant or by some third party with the defendant's knowledge or authorization. *Barnes v. State,* (1980) Ind., 403 N.E.2d 331.

■ Before trial counsel's failure to enter an objection may be regarded as ineffective representation, the petitioner must show that had a proper objection been made, the trial court would have had no choice but to sustain it. *Beard v. State,* (1981) Ind., 428 N.E.2d 772, 774. It appears that defense counsel opened the door for the above questioning on re-direct examination. At the close of cross-examination, defense counsel questioned Coleman about a plea agreement wherein the prosecutor would recommend that Coleman not be incarcerated at Pendleton or Michigan City.

Defense counsel tried to imply that Coleman would not go to those prisons simply because he did not "like" them. Trying to correct this impression, the prosecutor was surprised when Coleman testified on re-direct that he wanted incarceration elsewhere simply because of the minimum security available outside of Pendleton and Michigan City. The prosecutor moved to impeach Coleman on this answer and the trial court granted the motion. The testimony about the threats then followed. The scope of re-direct examination is to be directed to answering any new matter drawn out during cross-examination; once a defendant inquires into a subject on cross-examination, the State is entitled to prove the matter further on re-direct examination to avoid a false or misleading impression. *Woodford v. State,* (1980) Ind., 405 N.E.2d 522, 524. We find no ineffective representation just because counsel failed to object to the above testimony.

## B.

■ Next, the appellant contends that he was denied effective representation because his counsel failed to object to prosecutorial misconduct. This purported misconduct occurred during the State's examination of a witness who used the words "mug shot." Appellant claims error because the words "mug shot" informed the jury that he had been previously arrested. However, the appellant must show prejudice in this alleged error. *Johnson v. State,* (1982) Ind., 432 N.E.2d 403, 405. This appellant cannot do because he testified on the stand that he had previously been arrested and convicted. Thus, he directly informed the jury of his prior arrests. We fail to find ineffective representation in this issue.

## C.

Appellant next complains because defense counsel failed to object when the arresting officer testified that appellant did not make a statement after being arrested. The following testimony was one of the instances appellant complains about:

Officer Parnell: I immediately confronted Bruce Alan Kimble, identified myself as a police officer in the City of Indianapolis, advised him of what case I was investigating, and advised him of what charges he was under arrest for at this time, also read him his Constitutional rights, [asked] him if he would sign this waiver, also asked him if he wished to give me a statement, which he answered to as no, I don't have anything to say.

The other two instances complained of were in a similar vein.

Appellant cites *Doyle v. Ohio,* (1976) 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91, for the proposition that using a defendant's post-arrest silence to impeach a subsequent story violates the Due Process Clause of the Fourteenth Amendment. While this is true, appellant's post-arrest silence was not used in any manner to impeach him or implicate him in any manner. The police officer merely stated that the appellant had no statement to give upon being arrested.

 Assuming, *arguendo,* that defense counsel should have objected to the above testimony, we still fail to see how this reflects ineffective representation. As was stated above, an isolated mistake or instance of poor strategy does not render representation ineffective or inadequate. *Merida v. State,* (1979) 270 Ind. 218, 383 N.E.2d 1043. Besides, defense counsel skillfully cross-examined Officer Parnell, whereupon Parnell testified that it is not unusual for any person, guilty or innocent, to refuse to give a statement. No ineffective representation has been shown.

### D.

 Finally appellant argues that defense counsel's failure to raise the issues of prosecutorial misconduct in the motion to correct errors shows ineffective representation of counsel. We note that counsel did cite prosecutorial misconduct in the motion to correct errors, and that a different attorney handled the appeal. However, we will not second-guess the tactics of counsel. *Loman v. State,* (1976) 265 Ind. 255, 354

N.E.2d 205. It appears that the allegations of misconduct were without merit, and counsel, either one or both, decided not to pursue the issues on appeal. Regardless, appellant has failed to make a strong showing rebutting the presumption of competent representation. This Court fails to find that the trial was reduced to a mockery of justice.

In addition, it appears that appellant has decided to use the post-conviction relief rules as a means to have this Court review alleged errors that were not raised on direct appeal. He does this by using such labels as fundamental error or ineffective representation of counsel. We take a dim view of such practices. We strongly repeat that the post-conviction relief process is not a substitute for a direct appeal, but is a process for raising issues not known at the time of the original trial and appeal or for some reason not available to the defendant at that time. *Riner, supra; Bradberry, supra.*

### IV

 Prior to the post-conviction hearing, the appellant filed a motion requesting that he be allowed to proceed *pro se.* He also requested that Richard Lee Owen serve as his legal assistant. The motion acknowledged that Owen was not an attorney. The trial court denied the motion for a legal assistant. It is well settled that there is no constitutional right to lay assistance or lay counsel at either trial or appeal. *Owen v. State,* (1978) 269 Ind. 513, 518, 381 N.E.2d 1235, 1238. There is no error here.

### V

Finally, appellant claims that the cumulative effect of the alleged errors raised here shows that he was denied a fair trial. In view of our having found no error in any of the above issues, we find no merit in this argument. *Napier v. State,* (1983) Ind., 445 N.E.2d 1361.

The trial court is affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PRENTICE, JJ., concur.