**Bruce KIMBLE, Petitioner,**

v.

**Jack R. DUCKWORTH, Superintendent, and Indiana Attorney General, Respondents.**

**No. S 83–350.**

United States District Court,
N.D. Indiana,
South Bend Division.

April 13, 1984.

Bruce Kimble, pro se.

Linley E. Pearson, Atty. Gen. of Indiana, Robert B. Wente, Deputy Atty. Gen., Indianapolis, Ind., for respondents.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This petition for writ of habeas corpus was filed pursuant to 28 U.S.C. § 2254 by an inmate at the Indiana State Prison in Michigan City, Indiana. In accord with the dictates of *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), the complete state court record has been filed with, and carefully examined by, this court. Both sides having briefed their respective positions, this matter is now ripe for ruling.

Petitioner was convicted in a state court jury trial of first degree murder and first degree burglary, for which he received an indeterminate sentence of life imprisonment on September 22, 1977. This conviction was unanimously affirmed on direct appeal by the Supreme Court of Indiana. *Kimble v. State*, 270 Ind. 539, 387 N.E.2d 64 (1979).

Following his unsuccessful appeal, petitioner filed a motion for post-conviction relief under Ind.P.C.R. 1 § 1 with the convicting trial court. Upon its denial, the motion was appealed to the Supreme Court of Indiana, which again denied relief by unanimously affirming the trial court's denial and dismissal order. *Kimble v. State*, Ind., 451 N.E.2d 302 (1983). It appearing that petitioner has exhausted his available state court remedies, 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Perry v. Fairman*, 702 F.2d 119 (7th Cir.1983), and in the absence of a request for appointed counsel under 28 U.S.C. § 1915(d), this court turns now to an examination of the merits of petitioner's application for federal habeas relief.

Petitioner raises seven issues in this petition:

(1) whether the state trial court committed error by failing to read the final instructions to the jury before the jury retired to deliberate;

(2) whether the state trial court committed error by instructing the jury about the possibilities of parole, clemency, and reduction of sentence;

(3) whether the prosecutor's referring to petitioner's prior criminal record during trial constituted prosecutorial misconduct;

(4) whether the act of informing the jury that the crime for which petitioner was on trial was "all over the television" constituted prosecutorial misconduct;

(5) whether petitioner was denied the effective assistance of counsel;

(6) whether the trial court erred in denying petitioner's request for the presence and assistance of an inmate lay advocate at this trial and,

(7) whether the cumulative effect of the above alleged errors deprived petitioner of a fundamentally fair trial. Each of the above issues will be addressed in its turn.

## I.

At the conclusion of trial, the following exchange took place concerning the reading of final instructions:

[Prosecutor]: Are you going to read the instructions?

Court: If you want me to. Mr. Mayer?

Mr. Mayer: Oh, Judge, I don't care if you read them or not, we have all been here a long time, I'm going to comment on them in my argument, so I don't care if the court reads them or not.

\* \* \* \* \* \*

Court: So both parties would waive re-reading of the preliminary instructions and waive reading of the final instructions?

\* \* \* \* \* \*

Mr. Mayer: I think so. (R.Tr. 949–950).

Petitioner argues that the failure of the trial judge to read the instructions to the jury was an error so fundamental to his fair trial right that his attorney's waiver of that requirement was invalid, i.e., that only the petitioner could make such a waiver, and then only after having been fully informed by the trial judge of his "right" to have them read to the jury, so as to render his waiver a knowing and intelligent one.[1]

The Supreme Court of Indiana addressed the above argument as follows:

Appellant claims that it was fundamental error to waive the reading of the final instructions and cites *Purdy v. State,* (1977) 267 Ind. 282, 369 N.E.2d 633, for support. Purdy held that the defendant has the clear right to have the final instructions read aloud to the jury. In addition, appellant claims that he did not knowingly waive the reading of the final instructions. Defense counsel Mayer usually discussed waiving the reading of the final instructions with his clients. However, appellant states that Mayer testified at the hearing that he never discussed such a matter with appellant. Appellant misstates the record. The statement Mayer made, and which appellant repeats in the brief, was in response to a different question and did not deal with appellant Kimble at all. What Mayer said was while he could not remember specifically discussing the matter, appellant must have agreed with his decision to waive the reading. Mayer reached this conclusion because he always dis-

---

1. Petitioner argues, in support of his proposition that the "right" to have instructions read to a jury is a fundamental one, that trial Rule 51 of the Indiana Rules of Civil Procedure mandates the reading of final instructions to a jury. Ind. T.R. 51(B). While such a requirement appears to be mandatory in *civil* actions, it is questionable whether such applies to *criminal* actions. Thus,

> Except as otherwise provided, these rules govern the procedure and practice in all courts of the state of Indiana in all suits of a *civil* nature whether cognizable as cases at law, in equity, or of statutory origin. They shall be construed to secure the just, speedy and inex-

pensive determination of every action. Ind. T.R. 1. (emphasis added).

Rule 8 of the Indiana Rules of Criminal Procedure states, in relevant part:

> The court may of its own motion and shall, if requested by either party, reread to the jury the instructions given pursuant to the provisions of the first paragraph of this section along with the other instructions given to the jury at the close of the case.

Ind.Crim.R. 8(G). A careful reading of the above reveals, at best, ambiguity regarding any requirement that a trial judge must read the instructions to a jury; and, at worst, the total absence of any such requirement.

cussed these matters with his clients before making such a decision. Regardless, we find *Rice v. State* (1981) Ind., 426 N.E.2d 680, to be controlling. As found here, the defense counsel in *Rice* waived the reading of the final instructions. This Court held that since the decision was made before the clear right in *Purdy* was made known, defense counsel had done nothing wrong and the waiver did not amount to fundamental error. *Id.* 426 N.E.2d at 682. The same rationale applies here. *Purdy* was handed down in December, 1977, and appellant was convicted in September, 1977. There is no error on this issue.

*Kimble v. State, supra,* 451 N.E.2d at 304.

■ While it is true, as petitioner argues, that the Supreme Court of the United States has always required that waivers of rights be made "knowingly and intelligently," it is equally clear that "there is no single standard for determining when the waiver of a right will be sufficient." J. Nowak, R. Rotunda and J. Young, *Constitutional Law* 564 (2d ed. 1983) (footnote omitted). Thus, while the Court has required both a careful warning and an explicit waiver before in-custody interrogation of a suspect may proceed, *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), these requirements are markedly relaxed where searches of a person or his property are involved. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). J. Nowak, *et al., Constitutional Law, supra.*

In line with the above, and at one extreme of this "waiver scale" would be the extremely stringent standards set forth in F.R.Crim.P. 11 for a district court to follow before a guilty plea may be accepted. At the other end of this scale would be those tactical steps adopted by defense counsel during and after the trial itself. *See,* e.g., *United States v. Martinez,* 604 F.2d 361, *reh. denied,* 607 F.2d 1006 (5th Cir.), *cert. denied,* 444 U.S. 1034, 100 S.Ct. 708, 62 L.Ed.2d 671 (1979) (failure to object to trial judge's decision to continue trial in defendant's absence affirmed absent showing of plain error); *United States v. Warme,* 572 F.2d 57 (2d Cir.), *cert. denied,* 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 393 (1978) (failure to object to trial judge's decision to proceed in the defendant's absence constitutes waiver for purposes of raising issue on appeal); *United States v. Brown,* 571 F.2d 980 (6th Cir.1978) (failure to object to defendants' absence from in-chambers conference regarding juror dismissal constituted waiver of issue).

■ Applying the above to the facts of this case, this court concludes that the state trial court's failure to read the instructions to the jury, while hardly commendable, does not rise to the level of the breach of a right so fundamental as to be subject to the level of strict judicial scrutiny required, e.g., under F.R.Crim.P. 11.[2] Thus, the only question confronting this court is whether defense counsel's waiver of the requirement that the instructions be read to the jury was effective so as to bind the petitioner.

As the Supreme Court of Indiana declared in ruling on petitioner's post-conviction relief motion, petitioner's defense counsel stated that petitioner must have agreed to the waiver, because said defense counsel made it a normal practice to discuss such matters with his clients before agreeing to a waiver. 451 N.E.2d at 304.

■ Nevertheless, and regardless of the above, the critical point here is precisely the one made by the Supreme Court of Indiana in *Rice v. State,* Ind., 426 N.E.2d

**2.** This is certainly a lackadaisical approach to this most important function of a trial judge in a criminal trial. As already noted, the Supreme Court of Indiana has since condemned this mode of judicial informality in *Purdy v. State,* 267 Ind. 282, 369 N.E.2d 633 (1977). However, such practice was permitted, if frowned upon, at the time of petitioner's trial.

We are here not focusing on model practice for the conduct of state criminal trials, but rather on whether such practice violates the Constitution of the United States. The practice is within, but only barely so, the outer boundaries of that document.

680 (1981): such waivers by counsel made prior to the *Purdy* decision are binding on their clients for the reasons that (1) *Purdy* was not to be applied retroactively, because (2) such waivers do not amount to fundamental error. *Rice v. State*, 426 N.E.2d at 682. This court finds the Supreme Court of Indiana's reasoning in *Rice* to be compelling and apposite to the facts of this case. Accordingly, petitioner's claim on this count must fail.

## II.

Petitioner raises as his second ground for relief the issue of whether the state trial court committed error by instructing the jury about the possibilities of parole, clemency, and reduction of sentence.

The trial court's final instruction number 20, given without objection, reads as follows:

A person who is convicted of a crime by a jury is sentenced by the judge. In many cases the judge has certain sentencing alternatives which may include probation, restitution, short sentences, rehabilitation programs, etc. In other cases the law requires the judge to sentence to a term of imprisonment that is either fixed by the law, or set by the jury.

A person who is sentenced to imprisonment for less than life is entitled by law to a reduction of his time based upon a certain schedule and upon his behavior in the institution. Also he is given credit toward his sentence for time spent in jail on this charge. For these reasons it is possible that a person could serve considerably less than the stated sentence. On the other hand, it is also possible that a person could serve the full maximum. In either case it is determined by future events beyond our present knowledge or control.

A person who is sentenced to imprisonment for life will remain in prison for life, unless the governor of this state commutes the sentence upon recommendation of the clemency commission. If this occurs, a person serving life may be paroled. On the other hand, there is no certainty that it will happen, or if it does, when it may happen. This also is determined by future events which are beyond our present knowledge or control.

Therefore, in any case when arriving at your verdict, you should not consider or speculate as to the actual amount of time a person will serve. (R.Tr. 54).

Petitioner argues that such an instruction is prejudicial and a violation of due process in that the jury could consider the potential sentence in determining guilt or innocence instead of simply weighing the evidence adduced at trial.

 Whether in a civil or criminal trial context, it is a given that an instruction or a portion thereof must not be singled out of context, i.e., the charge must be examined as a whole. *See*, e.g., *United States v. Verkuilen*, 690 F.2d 648 (7th Cir.1982); *United States v. Hamilton*, 420 F.2d 1096 (7th Cir.1970). Further, petitioner's failure to object to Instruction 20 raises his burden of proof here to one substantially higher than that of mere error. *Cf., United States v. Jarrett*, 705 F.2d 198 (7th Cir. 1983).

In the case of *Bailey v. State*, Ind., 412 N.E.2d 56 (1980), the Supreme Court of Indiana held that a trial court could, in its discretion, give an instruction virtually identical to the one at issue here. The rationale advanced by the Court was that such an instruction prevents a jury which is still determining a defendant's guilt or innocence from getting side-tracked on a non-issue, viz., the degree of punishment the defendant will receive *if* convicted. *Id.*, at 61. Accord, *see Cooper v. State*, 265 Ind. 700, 359 N.E.2d 532 (1977); *Feggins v. State*, 265 Ind. 674, 359 N.E.2d 517 (1977).

 While this court is somewhat less sanguine than the *Bailey* court was in viewing the instruction in question as one of unmitigated salutary effect, this court nonetheless agrees with the Supreme Court of Indiana's conclusion that the subject instruction did not prevent petitioner from receiving a fundamentally fair trial. *Kim-*

*ble v. State, supra,* 451 N.E.2d at 305. *Accord, Grace v. Butterworth,* 635 F.2d 1 (1st Cir.1980), *cert. denied,* 452 U.S. 917, 101 S.Ct. 3053, 69 L.Ed.2d 421 (1981); *Clark v. Lockhart,* 512 F.2d 235 (8th Cir.), *cert. denied,* 423 U.S. 872, 96 S.Ct. 139, 46 L.Ed.2d 103 (1975); *McDonald v. State of Tennessee,* 486 F.Supp. 550 (M.D.Tenn. 1980). Accordingly, petitioner's second issue must fail.

### III.

Petitioner raises as his third and fourth lines of collateral attack that the prosecutor's references to petitioner's prior criminal record, as well as the prosecutor's act of informing the jury that the crime for which petitioner was on trial was "all over the television," constituted acts of prosecutorial misconduct.

The Supreme Court of Indiana held that the petitioner waived his right to advance this argument:

> We find that two of the asserted errors, dealing with prosecutorial misconduct, should have been raised on direct appeal of appellant's 1977 conviction for murder and burglary. The post-conviction relief process is not a substitute for a direct appeal, but is a process for raising issues not known at the time of the original trial and appeal or for some reason not available to the defendant at that time. *Riner v. State,* (1979) 271 Ind. 578, 582, 394 N.E.2d 140, 144; *Bradberry v. State,* (1977) 266 Ind. 530, 539, 364 N.E.2d 1183, 1188. The record reveals that after the appellant was convicted of murder and burglary, his attorney cited prosecutorial misconduct in the motion to correct errors. However, upon direct appeal, appellant did not pursue this claim. Therefore, we find that the issues dealing with the alleged prosecutorial misconduct have been waived.

451 N.E.2d at 303–4.

Petitioner, in order to exhaust his available State remedies, was jurisdictionally bound to raise these issues of prosecutorial misconduct within his Motion to Correct Errors and pursue the same on direct appeal to the Supreme Court of Indiana. His failure to do so resulted in the Supreme Court of Indiana's refusal to reach the merits thereon.

■ When a petitioner seeks to raise issues in his application for federal habeas relief that were not properly presented first to the state tribunals because of procedural defaults on his part, the federal habeas court will likewise decline to address the merits where the inmate-petitioner fails to show both "cause" and "prejudice." *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *United States ex rel. Spurlark v. Wolff,* 699 F.2d 354 (7th Cir.1983) (en banc). The courts have consistently and undeviatingly applied these criteria to habeas petitions, refusing even to address the question of "prejudice" unless and until the petitioner has first complied with the "cause" prong of the *Wainwright* test. *Engle v. Isaac, supra,* 456 U.S. at 134, n. 43, 102 S.Ct. at 1575, n. 43; *Williams v. Duckworth,* 724 F.2d 1439, 1443 (7th Cir.1984); *United States ex rel. Hudson v. Brierton,* 699 F.2d 917, 922 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 114, 78 L.Ed.2d 115 (1983).

■ Although petitioner laments at length the "prejudice" allegedly resulting from the prosecutor's putative acts of misconduct, he has utterly failed to show any grounds for his procedural missteps in the Indiana state courts. In the absence of any showing of "cause," this court must conclude, with the Supreme Court of Indiana, that petitioner has waived issues (3) and (4) on prosecutorial misconduct. *Williams v. Duckworth, supra,* and authorities collected at 1442–43.

### IV.

Petitioner raises as his fifth argument the issue of ineffective assistance of counsel by reciting those issues in his appeal of the PCR hearing and lists the same seven incidents which he claims evidences ineffective counsel:

(1) Counsel did not object to the final instructions not being read to the jury.

(2) Counsel did not object to the instruction number 20 being given to the jury.

(3) Counsel did not object when the prosecutor brought out during its witness' testimony that he had been allegedly threatened by Kimble's friends.

(4) Counsel did not object when the prosecutor committed misconduct by allowing a police officer to testify about mug shots being shown a witness.

(5) Counsel did not object when the prosecutor committed misconduct by repeatedly bringing out the fact that Kimble had remained silent during questioning by police.

(6) Counsel failed to include in the motion to correct errors the issue of prosecutorial misconduct when the prosecutor kept trying to bring up Kimble's arrest record.

(7) Counsel failed to include in the motion to correct errors the issue of prosecutorial misconduct when the prosecutor made reference to the fact that the offense was "all over the television."

■ The Sixth Amendment's guarantee of a right to counsel necessarily includes the right to the *effective* assistance of counsel. *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). The Seventh Circuit articulated the standard for determining the effectiveness claims under the Sixth Amendment as one of whether the attorney met a "minimum professional standard." *United States ex rel. Williams v. Twomey*, 510 F.2d 634, 640 (7th Cir.), *cert. denied*, 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975).

■ Tactical or strategic errors do not raise a presumption of a failure to meet the constitutional guarantee of adequate counsel. *United States v. Fleming*, 594 F.2d 598, 607 (7th Cir.), *cert. denied*, 442 U.S.

931, 99 S.Ct. 2863, 61 L.Ed.2d 299 (1979). In *United States ex rel. Williams v. Twomey, supra*, the court stated that:

We are aware that this decision goes beyond an inquiry as to whether the state court trial was a sham or a mockery. But we have not gone to the point, urged upon us, of declaring that there is at least a presumption of failure to meet the constitutional guarantee of assistance of counsel merely because defendant's attorney has been appointed on the day of trial, or is inexperienced in litigation, or makes egregious errors, tactical or strategic, in preparation, in conference, in examining witnesses, or in not investigating or calling potential witnesses.

*Id.*, at 640.

In *United States ex rel. Healey v. Cannon*, 553 F.2d 1052 (7th Cir.), *cert. denied*, 434 U.S. 874, 98 S.Ct. 221, 54 L.Ed.2d 153 (1977), the court further observed that:

The Supreme Court has repeatedly emphasized that the effectiveness of legal representation afforded criminal defendants is to be appraised by normative legal standards which, when applied in a specific factual context, yield a resolution concerning whether a particular defendant received constitutionally adequate assistance of counsel. *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

*Id.*, at 1057. For more recent authority, see *United States ex rel. Cosey v. Wolff*, 727 F.2d 656 (7th Cir.1984); *United States v. McDonald*, 723 F.2d 1288 (7th Cir.1983); *United States v. Bradshaw*, 719 F.2d 907 (7th Cir.1983); *United States v. Zylstra*, 713 F.2d 1332 (7th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 403, 78 L.Ed.2d 344 (1983); *United States v. Kalita*, 712 F.2d 1122 (7th Cir.1983). Bearing the above carefully in mind, this court turns now to an examination of the merits of petitioners' claim of ineffective trial counsel.

At paragraph 3 of his habeas application, petitioner alleges that counsel should have objected to witness Coleman's testimony regarding threats made upon Coleman by friends of the petitioner. On cross-examination of Coleman by counsel for petitioner, counsel made the tactical and normal decision to impeach the testimony of Coleman by eliciting facts surrounding Coleman's plea bargain. At this point, the door was opened for the prosecution to delve further into Coleman's reasons for desiring incarceration away from those who had threatened him. An objection under these circumstances would have been improper.

At paragraph 4, petitioner argues that counsel should have objected to the use by a witness for the prosecution of the word "mugshot." However, petitioner, during his own testimony, stated that he had been previously arrested and convicted. Therefore, the use of the word "mugshot" cannot reasonably be construed as having unduly prejudiced petitioner. Failure to object to the word was not ineffective assistance of counsel.

At paragraph 5, petitioner argues that counsel should have objected to the prosecution's efforts at "bringing out ... that Kimble had remained silent during questioning by police." Again, the record reflects that the failure to object was a tactical decision by counsel. Counsel for petitioner allowed the witness Parnell to testify as to the petitioner's post-arrest silence and then on cross-examination of Parnell (R.Tr. 573), and direct examination of petitioner (R.Tr. 876–879), showed that petitioner had signed a waiver of his rights and then told Parnell that he knew nothing of the crime charged. In fact, the record reflects that the decision of counsel was probably well advised.

Regardless of this, the testimony of Parnell did not implicate the petitioner in the crime. Strategic decisions or isolated misjudgments do not give rise to grounds to argue ineffective assistance of counsel. *United States v. Fleming, supra.*

At paragraph 6, petitioner argues that his counsel in the motion to correct errors failed to argue that the prosecutor committed misconduct when he alluded to petitioner's arrest record at trial. However, petitioner himself, during direct examination, testified as to his criminal history (R.Tr. 867).

Upon cross-examination, the prosecution then attempted to delve deeper into petitioner's criminal record (R.Tr. 885–893). Much of the questioning was objected to by counsel for petitioner. The record as cited above falls short of evidencing prosecutorial misconduct. As such, prosecutorial misconduct was not a proper issue on appeal. Moreover, as the Supreme Court of Indiana noted in its opinion affirming the PCR court, counsel for petitioner cited prosecutorial misconduct in his motion to correct errors, but failed to pursue the same on appeal. *Kimble v. United States, supra,* 451 N.E.2d at 307.

At paragraph 7, petitioner argues that the prosecution's questions (found at R.Tr. 926–927) concerning the crimes the petitioner was charged with were well publicized by television before his arrest and that he must have seen the broadcasts, constituted misconduct. Petitioner argues this misconduct should have been raised in the motion to correct errors. The questions that are complained of were objected to and sustained.

While this court is less than comfortable with the prosecutor's line of questioning here, the only attention drawn by this line of questioning was that the crimes committed were newsworthy. Petitioner was not prejudiced by the questions. The line of questioning did not rise to the level of misconduct, and counsel's failure to raise this as "misconduct" in the motion to correct errors does not state grounds for ineffective assistance of counsel. Accordingly, petitioner's fifth claim must also fail.

### V.

Petitioner raises as his sixth claim the issue of the trial court's refusal to allow petitioner the in-court assistance of an inmate lay advocate.

It is well settled that there is no Sixth Amendment right to lay assistance or lay counsel, or even to the assistance of an unlicensed but otherwise qualified attorney or former attorney. *United States v. Taylor,* 569 F.2d 448 (7th Cir.), *cert. denied,* 435 U.S. 952, 98 S.Ct. 1581, 55 L.Ed.2d 803 (1978); *United States v. Peterson,* 550 F.2d 379 (7th Cir.1977); *Fair v. Givan,* 509 F.Supp. 1086 (N.D.Ind.1981). *Accord, see United States v. Gigax,* 605 F.2d 507 (10th Cir.1979); *United States v. Benson,* 592 F.2d 257 (5th Cir.1979); *United States v. Buttorff,* 572 F.2d 619 (8th Cir.), *cert. denied,* 437 U.S. 906, 98 S.Ct. 3095, 57 L.Ed.2d 1136, *reh. denied,* 439 U.S. 884, 99 S.Ct. 228, 58 L.Ed.2d 199 (1978); *United States v. Wilhelm,* 570 F.2d 461 (3d Cir.1978). Accordingly, petitioner's sixth issue is wholly without merit and necessarily fails.

### VI.

At the risk of being accused of only cursorily treating petitioner's final issue, it is nevertheless clear that, in view that all of the above averments are without merit, petitioner's argument that the cumulative effect of all the errors prevented a fair trial clearly has no legal basis.

Accordingly, the writ is hereby DENIED, petition DISMISSED. SO ORDERED.